UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>       Plaintiff,<br><br>   v.<br><br>SANTA CATALINA ISLAND COMPANY AND CITY OF AVALON,<br><br>       Defendants. | Case No.: 2:19-cv-01139-MEMF-AS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISQUALIFY BEST BEST & KRIEGER [ECF NO. 128]** |
| AND ALL RELATED CROSS-ACTIONS. | |

   Before the Court is Plaintiff Long Beach Unified School District's Motion to Disqualify Best Best & Krieger as counsel for the City of Avalon, one of the Defendants in this case. ECF No. 128. On March 17, 2022, the Court held a hearing on the Motion.[1]  For the reasons provided below, the Court GRANTS the Motion.

---

[1] During the March 17, 2022 hearing, both Best Best & Krieger and the City of Avalon were represented. Best Best & Krieger was represented by David Cantrell of Lester, Cantrell & Kraus LLP and John Holloway of Best Best & Krieger. Greg Kettles, of Best Best & Krieger, appeared on behalf of the City of Avalon.

1

I. **Background**

A. Factual Background

1. The District's Claims

On February 14, 2019, Plaintiff and Counter-defendant Long Beach Unified School District ("the District") filed this Complaint against the City of Avalon ("the City") and the Santa Catalina Island Company seeking to recover necessary response costs and declaratory judgment related to releases and threatened releases of hazardous substances on the Avalon School's campus (the "Avalon School Site"). ECF No. 1 ("Complaint"). The District alleges that the City is responsible for contamination and hazardous waste found on multiple District properties—including the Avalon School Site—resulting from the operation of a manufactured gas plant, an electric power plant, a golf course, and burn dumps on or around the property. *Id.* at ¶ 2. The District alleges it has incurred costs associated with the assessment and remediation of its properties. *Id.* at ¶¶ 3–5.

2. BB&K's Former Representation of the District

From 2006 to 2007, Best Best & Krieger ("BB&K") attorneys Marguerite Strand and Tyree Dorward were retained to provide legal advice and counsel to the District regarding regulatory compliance issues on four District properties, including the Avalon School Site. ECF No. 129-22 ("Matsumoto Decl."), at ¶¶ 3–4.

According to Carri Matsumoto, former Executive Director of Facilities for the District, BB&K's representation of the District included the following: advising the District with respect to the contamination issues at the Avalon School Site, engaging in discussions about potential claims against parties responsible for the contamination, providing counsel regarding the drafting of privileged and confidential talking points concerning liability at the Avalon School Site, and preparing comments on important Department of Toxic Substances Control ("DTSC") documents shaping the District's response to the contamination. Matsumoto Decl., at ¶¶ 4–7, 9; ECF No. 128-2 ("Smith Decl."), at Exhs. 6–10. The District alleges that Ms. Strand and Mr. Dorward participated in numerous meetings and telephone conferences with District staff and consultants to discuss environmental issues related to the Avalon School Site. *Id.* at ¶¶ 5, 8.

While BB&K and the City acknowledge that Ms. Strand and Mr. Dorward's representation involved the provision of legal advice and that an attorney-client relationship was established,[2] they contend that the representation was more limited in scope than described by the District. They allege that Ms. Strand and Mr. Dorward were engaged to provide consultation regarding regulatory compliance issues on four properties owned by the District, including the Avalon School Site. City of Avalon and Best Best & Krieger LLP's Joint Opposition to Motion to Disqualify ("Oppo."), at 10. They also argue that Ms. Strand and Mr. Dorward's representation of the District was primarily limited to providing revisions to public DTSC submissions and updates to the District and DTSC concerning the status of the implementation of a Remedial Action Plan. *Id.* at 10–11. They further allege that Ms. Strand and Mr. Dorward cumulatively billed no more than thirty-five hours on tasks potentially related to the Avalon School Site. ECF No. 160 ("Dorward Decl."), at ¶ 5. BB&K and the City concede that in May 2006, Ms. Strand revised talking points for a meeting in which the District discussed four school sites with ongoing environmental work. Oppo., at 11. They also acknowledge that in June 2006, Ms. Strand and Mr. Dorward contributed revisions to a DTSC fact sheet on the status of clean-up activities that was eventually distributed to the public. *Id.* However, BB&K and the City contend that the talking points contained only commentary available to the public and that the DTSC fact sheet revisions were non-substantive in nature. *Id.*

The billing invoices from BB&K to the District show that Ms. Strand and Mr. Dorward, as part of their representation of the District, met with or drafted correspondence to the District regarding the subject of their representation. Smith Decl., at Exh. 11. In early 2007, BB&K's attorney-client relationship with the District was terminated. Matsumoto Decl., at ¶ 9. And in the spring of that year, the District hired its current counsel, Atkinson, Anderson, Loya, Ruud & Romo. Matsumoto Decl., at ¶ 10.

### 3. BB&K's Current Representation of the City

In 2008, Ms. Strand left BB&K. ECF No. 162 ("Strand Decl."), at ¶ 5. In March 2012, DTSC issued an Imminent and Substantial Endangerment Order ("ISE Order"), naming the District, the

---

[2] Counsel for BB&K acknowledged this at the March 17 hearing on the Motion.

1  City, and Santa Catalina Island Company as potentially responsible parties for contaminants at the
2  Avalon School Site. ECF No. 176 ("Holloway Decl."), at Exh. 11. Thereafter, the City engaged
3  BB&K attorneys Gene Tanaka and John Holloway to represent it in the dispute concerning the ISE
4  Order. ECF No. 163 ("Radde Decl."), at ¶ 4. Although BB&K conducted an internal conflict check
5  prior to the start of the representation, because the work concerning the Avalon School Site was
6  billed to a "general" number for the District, and did not have its own billing number, the 2012
7  conflict check did not reveal this work, although the time entries billed to this "general" number did
8  specifically reference the Avalon School Site.[3] Egger Decl., at ¶ 5. At no time did BB&K disclose
9  that its prior work for the District might present a conflict of interest, nor did it request a conflict
10 waiver from the District with respect to its representation of the City. Matsumoto Decl., at ¶ 11.

In April 2012, the District, the City, the Santa Catalina Island Company, and their counsel met to discuss the ISE Order. Holloway Decl., at ¶ 3. Ms. Matsumoto and Peggy Williams, a facilities consultant for the District who began working on the Avalon School matter in August 2006, attended the meeting. *Id.* at Exh. 1; ECF No. 161 ("Williams Decl."), at ¶ 5. Ms. Matsumoto recalls meeting with BB&K lawyers representing the City in 2012. Matsumoto Decl., at ¶ 11. Ms. Williams similarly acknowledges in her declaration that she was aware that BB&K, who was now representing the City, had previously represented the District. Williams Decl., at ¶ 6. However, Ms. Williams noted that she believed at the time that this was "a non-issue" that did not pose a conflict. *Id.* Mr. Tanaka also attended the meeting on behalf of BB&K, but neither Ms. Strand nor Mr. Dorward were present. Holloway Decl., at Exh. 1.

In April 2021, the City and the Santa Catalina Island Company filed a Motion for Partial Summary Judgment, contending that the statute of limitations on many of the District's claims began to run in 2005. ECF No. 76. In August 2021, the City's Motion for Partial Summary Judgment was granted. ECF No. 114. In granting partial summary judgment, the court found that the City and the

---

[3] At the March 17 hearing on the Motion, counsel for BB&K clarified that although the Egger Declaration states that "none of [the] matters [associated with BB&K's prior representation of the District] referenced the Avalon School Site," Egger Decl., at ¶ 3, the invoices for this work did reference the Avalon School Site, albeit only in the individual time entries as opposed to the description of the matter to which the time entries were being billed.

Santa Catalina Island Company were entitled to judgment in their favor on four of the District's five claims. *See* ECF No. 114 at 18. With respect to the fifth claim—for continuing public and private nuisance—the court found that the City and the Santa Catalina Island Company were entitled to judgment in their favor with respect to the entirety of the public nuisance claim, and a portion of the private nuisance claim. *Id.* As a result, the only remaining claim in the case is the District's claim for relief for continuing private nuisance after February 14, 2016. *See* ECF No. 114 at 18.

According to BB&K and the City, to date, BB&K staff and attorneys have engaged in over 7,000 hours of litigation activity in relation to the current case. Holloway Decl., at ¶ 23. Moreover, the claims brought by the District have required extensive discovery, including the exchange of over 100,000 documents and fifteen expert reports. *Id.*

4. The District's Motion to Disqualify

On February 14, 2019, the District filed the instant lawsuit. Complaint, at 1. Over the course of the discovery process, the District produced emails between Ms. Matsumoto and BB&K dating back to 2006. *Id.* at ¶ 9. In January 2020, the City served a document subpoena on a third party, requesting production of "All Documents and Communications related to the Avalon School Project," including those that predated DTSC's March 2012 ISEO. *Id.* at Exh. 7; ECF No. 128-14 ("Knauft Decl."), at ¶ 4. In response, the District asserted the work product privilege over some of the documents. Knauft Decl., at ¶ 2, Exh. 1.

In October 2021, the District conducted a review of its allegedly privileged documents. Knauft Decl., at ¶ 11. During this review of pre-ISEO documents, the District found several documents and communications suggesting an attorney-client relationship between the District and BB&K, including a set of talking points for a meeting of the School Board that expressly contemplated litigation related to the contamination at the Avalon School. Knauft Decl., at ¶ 6, 11. These talking points, which were marked privileged and confidential, had been shared with BB&K. *Id.* at ¶ 10; Smith Decl., at Exh. 8. According to the District, it was not until then that its current counsel realized that an attorney-client relationship concerning the Avalon School had previously existed between the District and BB&K. Knauft Decl., at ¶ 11; ECF No. 128-23 ("Tao Decl."), at ¶¶ 3, 5.

On October 28, 2021, the District informed BB&K of the alleged conflict of interest during a meet and confer. Knauft Decl., at ¶ 13. On November 2, 2021, the District sent a letter to BB&K raising concerns regarding BB&K's prior representation of the District "in connection with the presence of environmental contaminants at the Avalon School, which is the subject matter of this litigation." Smith Decl., at Exh. 1. After a number of video conferences and the exchange of correspondence, the parties were ultimately unable to reach a resolution. Smith Decl., at ¶¶ 3–6, Exh. 2-5. The District requested that BB&K withdraw from the case, but BB&K refused. ECF No. 118 ("Joint Report RE: Conference on Motion to Disqualify").

### B. Procedural History

On January 18, 2022, the District filed this Motion to Disqualify Best Best & Krieger as counsel to the City, noticing a hearing on February 28, 2022.[4] ECF No. 128. On February 7, 2022, BB&K and the City filed a Joint Opposition to the Motion. ECF No. 134. Pursuant to an Order of the Chief Judge, this case was transferred to this Court on February 10, 2022. ECF No. 177. On February 14, this Court issued a Reassignment Order that, among other actions, vacated the February 28 hearing date. ECF. 178. That same day, the District filed its Reply in support of its Motion. On March 2, 2022, the District re-noticed its Motion for hearing on March 17, 2022.

## II. Legal Standard

Federal courts apply state law when determining matters related to disqualification of counsel. *See Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1049 (9th Cir. 2016). The authority to disqualify an attorney is derived from the trial court's inherent power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any matter connected with a judicial proceeding before it, in every matter pertaining thereto." CAL. CIV. PROC. CODE § 128(a)(5); *see also Zador Corp. v. Kwan*, 37 Cal. Rptr. 2d 754, 758 (1995). However,

---

[4] Under the operative Second Amended Scheduling and Case Management Order, the Fact Discovery Cut-Off Deadline was January 18, 2022, and the Motion Cut-Off Deadline was February 7, 2022. ECF No. 110. In their Opposition, BB&K and the City contend that the District's Motion is untimely and should be denied because it is set for hearing twenty-one days past the deadline for motion hearings. In this case, given the nature of the allegations set forth in the Motion, the Court has decided to exercise its discretion to review the Motion on the merits. However, the District is advised to file timely motions in compliance with the briefing schedule set forth in the Central District of California's local rules, the operative Scheduling Order, and this Court's Standing Order in the future.

6

because motions to disqualify may be tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored, imposed only when necessary, and subjected to "particularly strict judicial scrutiny." *See Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). At the same time, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 86 Cal. Rptr. 2d 20, 23–24 (1999).

Therefore, a party moving to disqualify counsel carries the burden of establishing by a preponderance of the evidence that a substantial relationship exists. *See H.F. Ahmanson & Co. v. Salomon Bros.*, 280 Cal. Rptr. 614, 617–18 (1991). Where an attorney successively represents one client following the prior representation of another client, the Court's concern is to enforce the duty of confidentiality owed to the former client. *Flatt v. Superior Court*, 885 P.2d 950, 954 (Cal. 1994). Moreover, courts typically consult the relevant Model Rules of Professional Conduct as persuasive authority when resolving issues implicated by the Rules. *In re County of Los Angeles*, 223 F.3d 990, 993 n.1 (2000). Where an attorney engages in successive representation, they must first obtain informed consent of the former client. *Id.* at 950; *see also* CAL. PROF. CONDUCT R. 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."). In the event the attorney fails to do so, the former client may disqualify the attorney by showing a "substantial relationship" between the subjects of the prior and current representations. *Id.* at 950. This disqualification extends vicariously to the entire firm. *Id.* at 954–55; *see also* CAL. PROF. CONDUCT R. 1.10 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1.9.").

However, when the opposing party can demonstrate prima facie "evidence of unreasonable delay in bringing the motion, causing prejudice to the present client, the motion for disqualification should not be granted." *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 43 Cal. Rptr. 2d 327, 336–37 (1995).

### III. Discussion

In filing the instant Motion, the District seeks BB&K's disqualification from representing the City. The District contends that BB&K should be disqualified because BB&K's former representation of the District and current representation of the City are substantially related and that such disqualification extends vicariously to the entire firm. Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Disqualify ("Memo"), at 11–20. In response, BB&K and the City argue that the Motion should be denied because: (1) BB&K's representation of the District was not substantially related to its current representation of the City; (2) any warranted disqualification would not extend vicariously to the entire firm; and (3) the District unreasonably delayed seeking disqualification. City of Avalon and Best Best & Krieger LLP's Joint Opposition to Motion to Disqualify ("Opposition"), at 15–31. Neither party disputes that BB&K failed to obtain informed consent.

#### A. BB&K's Former Representation of the District and Current Representation of the City Are Substantially Related

To support disqualification of counsel in a case of successive representation, the former and current representation must be substantially related. Courts consider two factors in applying this "substantial relationship test": (1) whether the attorney had a direct professional relationship with the former client; and (2) whether the relationship touched on issues closely related to the present litigation. *City & Cnty. of San Francisco v. Cobra Solutions, Inc.*, 135 P.3d 20, 25 (Cal. 2006) (citing *Jessen v. Hartford Cas. Ins. Co.*, 3 Cal. Rptr. 3d 877, 884–85 (2003)). This test requires evidence supporting a rational conclusion that "information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Khani v. Ford Motor Co.*, 155 Cal. Rptr. 3d 532, 535 (2013).

A former representation that involves a "direct" relationship—one where the lawyer was personally involved in providing legal advice and services to the former client—gives rise to a presumption that the attorney received confidential information. *Jessen*, 3 Cal. Rptr. 3d at 884–85 ("[T]here cannot be any delving into the specifics of the communications between the attorney and

the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship."). A substantial relationship between the representations exists where the former representation involved a direct relationship and the matters are substantially related. *Id.* This substantial relationship gives rise to the presumption that the attorney has access to confidential information relevant to the subsequent representation.[5] *Id.* at 881–85 (noting that this presumption exists because a direct attorney-client relationship is "inherently one during which confidential information 'would normally have been imparted to the attorney by virtue of the nature of [that sort of] former representation,' and therefore it will be conclusively presumed that the attorney acquired confidential information relevant to the current representation if it is congruent with the former representation" (quoting *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 280 Cal. Rptr. at 619)).

### 1. The District Had a Direct Relationship with BB&K Attorneys With Respect to Its Former Representation

First, the Court will consider whether Ms. Strand and Mr. Dorward had a direct relationship with the District in its prior representation. A direct relationship is one where the lawyer was personally involved in providing legal advice and services to the former client. *Jessen*, 3 Cal. Rptr. 3d at 884–85; *see also People ex rel. Deukmejian v. Brown*, 624 P.2d 1206, 1208 (Cal. 1981) (finding that an attorney had a direct relationship with their prior clients where the lawyer provided legal advice at a conference with the former clients, creating a "classic attorney-client scenario," even where the record did "not reveal whether the [attorney] acquired any knowledge or information from his clients").

The parties disagree vehemently regarding the exact nature and scope of BB&K's former representation of the District. In support of its Motion to Disqualify, the District submitted multiple declarations, including those by Carri Matsumoto, former Executive Director of Facilities for the District, and Gary Smith, counsel for the District. Ms. Matsumoto alleges that BB&K advised the

---

[5] As noted above, however, the paramount concern on the facts of this case is the "preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." In the instant case, the Court's concern regarding confidentiality is lower, given that it does not appear that the new BB&K attorneys actually obtained client confidences.

District with respect to the contamination issues at the Avalon School Site from 2006 to 2007, was involved in discussions about potential claims against third parties, provided counsel regarding the drafting of privileged and confidential talking points concerning liability at the Avalon School Site, and prepared comments on important DTSC documents shaping the response to the contamination. *See* Matusmoto Decl., at ¶¶ 4–7, 9; Smith Decl., at Exhs. 6–10.

In contrast, BB&K and the City contend that Ms. Strand and Mr. Dorward's representation of the District was primarily limited to providing revisions to public DTSC submissions and updates to the District and DTSC concerning the status of the implementation of the Remedial Action Plan. *See* Opposition at 17; Strand Decl., at ¶¶ 2–3; Dorward Decl., at ¶ 4. However, BB&K and the City do not contest that the District is a former BB&K client, that the representation involved the provision of legal advice, or that BB&K formed an attorney-client relationship.[6] Moreover, the billing invoices from BB&K to the District reveal that Ms. Strand and Mr. Dorward, as part of their representation of the District, met with or drafted correspondence to the District regarding the subject of their representation. *See, e.g.*, Smith Decl., at Exh. 11, Pg. 30 (showing that Ms. Strand participated in teleconferences with the District); Pg. 37 (showing that Mr. Dorward "draft[ed] correspondence to Carri Matsumoto RE comments on Los Angeles USD Program EIR for proposed South Region High School No. 4" and "Re Comment Letter"). Given that BB&K's prior representation of the District involved the provision of legal advice, creating a "classic attorney-client scenario," the Court finds that Ms. Strand and Mr. Dorward had a direct relationship with the District with respect to their former representation.

          2.    <u>The Relationship Between the Two Representations Are Rationally Linked</u>

Second, the Court will consider whether Ms. Strand and Mr. Dorward's relationship with the District touched on issues related to the pending litigation. This factor does not require that the issues in the two representations be identical. *Trone v. Smith*, 621 F.2d 994, 1000 (9th Cir. 1980). Ms. Strand and Mr. Dorward were engaged to provide legal advice and counsel regarding, among other things, the contamination and remediation of the Avalon School Site. In the instant action, the

---

[6] These latter two points were acknowledged at the hearing.

1   District seeks recovery of costs related to releases and threatened releases of hazardous substances
2   on the Avalon School's main campus, where it alleges the City previously owned and operated a
3   manufactured gas plant on part of the Avalon School Site. Accordingly, the similarities of the legal
4   and factual issues of BB&K's prior representation of the District put BB&K in a position where
5   confidential information material to its current representation of the City was likely imparted to
6   counsel. In light of the above, the Court finds that BB&K's prior representation of the District and
7   current representation of the City are substantially related.

### B.  Disqualification of Counsel Extends Vicariously to the Entire Firm

Next, the Court considers whether Ms. Strand and Mr. Dorward's disqualification must be imputed to all of BB&K. Generally, disqualification of an attorney's representation of a successive client extends to their entire firm. *Flatt*, 885 P.2d at 954. In their Opposition, however, BB&K and the City asserted that this presumption of vicarious disqualification may be rebutted by evidence that "there was no realistic chance" for confidential information to be shared. Opposition, at 18. They cited *Goldberg v. Warner/Chappell Music, Inc.*, wherein the court concluded that a law firm representing an employer in a discrimination action was not disqualified from its current representation, even though a former attorney it employed had a prior informal attorney-client relationship with the employee bringing the suit against the employer, because the attorney had left the firm three years prior to the initiation of the employee's lawsuit and therefore had no opportunity to inadvertently pass on confidential information to others at the firm. 125 Cal. App. 4th 752, 760–762 (2005). The *Goldberg* court noted, however, that "if [the attorney] were still practicing at [the firm], [the firm] would likely have to be disqualified from the current litigation because there would be no practical way of ensuring that, despite his best intentions, [the attorney] would not let slip some confidential information he may not even be aware he possesses." *Id.*

Here, Ms. Strand left BB&K in 2008, eleven years before the operative complaint in the instant action is filed. As a result, the Court finds that Ms. Strand had "no opportunity to inadvertently pass on confidential information" to others at BB&K." However, Mr. Dorward is still employed by BB&K and, as a result, is in danger of revealing confidential information he obtained


from his representation of the District.[7] Accordingly, the Court finds that Mr. Dorward's disqualification extends vicariously to the entire firm.

### C. The District Did Not Unreasonably Delay Seeking Disqualification

Finally, BB&K and the City contend that, even if Ms. Strand and Mr. Dorward's prior representation of the District warrants disqualification of the entire firm, the District's Motion should nonetheless be denied because the District unreasonably delayed seeking disqualification. A party opposing a motion for disqualification may defeat the motion by offering prima facie "evidence of unreasonable delay in bringing the motion, causing prejudice to the present client, the motion for disqualification should not be granted." *Metro-Goldwyn-Mayer*, 43 Cal. Rptr. 2d at 336–37. However, delay alone will not necessarily result in the denial of a disqualification motion; the ensuing prejudice caused by the delay must be extreme. *Zador Corp.*, 37 Cal. Rptr. 2d at 764. Once this prima facie showing is provided, "[t]he burden then shifts back to the party seeking disqualification to justify the delay." *Id.* (quoting *Western Cont. Operating Co. v. Nat. Gas Corp.*, 261 Cal. Rptr. 100, 107 (1989)).

> 1. BB&K and the City Failed to Make a Prima Facie Showing of Unreasonable Delay

As an initial matter, BB&K and the City bear the burden of offering prima facie evidence of unreasonable delay. In determining whether a delay is reasonable, courts consider factors such as: (1) the stage of litigation at which the motion is made; and (2) the complexity of the case. *Liberty Nat'l Enters., L.P. v. Chicago Title Ins. Co.*, 123 Cal. Rptr. 3d 498, 486–88 (2011). As discussed below, the Court finds that BB&K and the City have not met their burden.

---

[7] In their Opposition, BB&K and the City cite to *Escalante v. Cnty. of Los Angeles*, No. CV 19-8695-JFW(JPRx), 2020 WL 5044416, at *1–3 (C.D. Cal. May 28, 2020), for the proposition that "vicarious disqualification may be avoided where the non-moving party demonstrates 'the practical effect of formal screening has been achieved.'" Oppo., at 18. However, *Escalante* is distinguishable in that it involves vicarious disqualification of a non-attorney. Moreover, California courts have held that "where an attorney with confidential information is disqualified from representing a client, . . . an 'ethical wall' between the attorney and his or her firm will generally not preclude the disqualification of the firm. . . . Instead, there is a presumption that each member of the firm has imputed knowledge of the confidential information." *Meza v. H. Muehlstein & Co.*, 98 Cal. Rptr. 3d 422, 429–30 (2009) (quoting *Henriksen v. Great American Savings & Loan*, 14 Cal. Rptr. 2d 184, 187 (1992)). And in the instant case, the ethical wall was not constructed until years after the ostensible conflict arose. Egger Decl., at ¶ 7; Opposition, at 20.

          *i.*    *The Stage of Litigation Does Not Weigh in Favor of a Finding of Unreasonableness*

First, the Court considers the stage of litigation at which the disqualification motion was filed. The District's Motion was filed on January 18, 2022, at the end of the fact discovery process. Memo, at 1. According to BB&K and the City, BB&K staff and attorney have engaged in over 7,000 hours of litigation activity in relation to this case. Holloway Decl., at ¶ 23. As BB&K and the City note in their Opposition, courts have found unreasonable delay in motions brought even earlier and with fewer hours invested than the instant motion. *See, e.g., id.* at 504 (finding that a motion filed "roughly midway through the case" was unreasonable because it was "a very bad time to have to change lawyers, especially in a case that involves the interplay of many documents and several witnesses"); *River West, Inc. v. Nickel*, 234 Cal. Rptr. 33, 44 (1987) (finding that a motion filed after opposing counsel "engage[d] in over 3,000 hours of litigation effort . . . constitutes prejudice in more than time and dollars expended" and resulted in unreasonable delay).

BB&K and the City point out that the District did not file their Motion to Disqualify until a mere three months before trial was originally scheduled to take place. However, per this Court's Reassignment Order, dated February 14, 2022, the trial date was vacated and has yet to be reset. ECF No. 178. Given the Court's calendar, trial will likely be scheduled for no sooner than August 2022—giving the City several months to find new counsel capable of defending this litigation effectively. As a result, the Court finds that the stage-of-litigation factor does not weigh in favor of a finding of unreasonableness.

          *ii.*    *The Complexity of the Case Does Not Weigh in Favor of a Finding of Unreasonableness*

Second, the Court considers the complexity of the case. The claims originally brought by the District, involving a number of environmental issues, the exchange of over 100,000 documents, and fifteen expert reports, were undeniably complex. Holloway Decl., at ¶ 23. But in light of the City's successful summary judgment motion, the case has significantly narrowed, and the only claim remaining is a portion of one of the original five claims—the claim for relief for continuing private

nuisance from February 14, 2016, onwards. *See* ECF No. 114. In light of this, the Court finds that the complexity-of-the-case factor dos not weigh in favor of a finding of unreasonableness.

       2. <u>BB&K and the City Would Not Suffer Extreme Prejudice If the District's Motion Were Granted</u>

  Next, in determining whether the non-moving party would suffer extreme prejudice as a result of an unreasonable delay, courts will consider "the interest and right of the nonmoving client to the lawyer of its choice." *Liberty*, 123 Cal. Rptr. 3d at 505. Prejudice to a non-moving party may be extreme where the non-moving client had a "long association" with its attorney, and the attorney had both great "knowledge [and] success with the case." *Id.* Courts have also found prejudice where the non-moving party "engage[d] in over 3,000 hours of litigation effort at a cost of $387,000 . . . constitut[ing] prejudice in more than time and dollars expended," the non-moving party was in possession of "substantial 'work product,'" and the right to the possession and interpretation of the work product "would become a serious and complex issue if counsel were disqualified prior to its use." *River West,* 234 Cal. Rptr. at 44. Here, BB&K was first engaged in this case in 2012, when the ISE Order was first issued, and has represented the City in this matter for years, acquiring a deep "knowledge of this case." Radde Decl., at ¶ 4. Indeed, Mr. Holloway estimated that replacement counsel and staff "would need to spend more than 500 hours reviewing the documents and pleadings in this Lawsuit just to come up-to-speed on this case." Holloway Decl., at ¶ 23. Moreover, BB&K has had success with this case—in August 2021, the City's Motion for Partial Summary Judgment was granted. ECF No. 114. BB&K's staff and attorneys have engaged in over 7,000 hours of litigation effort, thousands of hours more than what the court deemed prejudicial in *River West*.

  However, as discussed *supra*, the trial date for this matter was vacated and has yet to be reset. ECF. 178. Given the Court's calendar, trial will likely be scheduled for no sooner than August 2022—giving the City several months to find new counsel capable of defending this litigation effectively. The City's new counsel will doubtless have enough additional time to "come up-to-speed" on this case.

  Accordingly, the Court finds that BB&K and the City would not suffer extreme prejudice if the District's Motion were granted.

       3.      Even if There is Prima Facie Evidence of Unreasonable Delay and Extreme Prejudice, The District Successfully Meets Its Burden to Justify Delay

Even if BB&K and the City met their burden of providing prima facie evidence of unreasonable delay and extreme prejudice, the burden would shift to the District. The District contends that it did not actually discover the conflict of interest until October 2021, when a review of pre-ISEO privileged documents revealed that confidential documents, including talking points contemplating litigation related to the contamination at the Avalon School, had been shared with BB&K during their prior representation. Knauft Decl., at ¶¶ 10–11; Tao Decl., at ¶¶ 3, 5. In response, BB&K and the City argue that the District has been aware of facts underlying the potential conflict of interest since 2012.

Under California law, delay in filing a motion to disqualify is calculated from the date the moving party *actually* perceives the conflict, not the date it first obtains the facts from which an inference of conflict could be drawn.[8] *See Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 443 n.11 (9th Cir. 1983) (measuring delay from date moving party's counsel "took note" of appearance of disqualifying attorney's name on opposing counsel's letterhead, although name first appeared on letterhead six months earlier); *Western Cont.*, 261 Cal. Rptr. at 107 (disregarding period during which general counsel was aware of facts constituting conflict, where such counsel attested that conflict "was not fully considered" until outside counsel retained eleven months later, at which point outside counsel discovered conflict).

---

[8] BB&K and the City cite to *Liberty* to support their contention that information sufficient to put a moving party on inquiry notice of a conflict of interest is also sufficient to "start the clock ticking" in calculating delay. *Liberty Nat'l Enterprises, L.P. v. Chicago Title Ins. Co.*, 123 Cal. Rptr. 3d at 503–04 (finding that "clock [started] ticking" two years prior to filing of motion to disqualify when moving party was on inquiry notice of prior representation). However, *Liberty* is distinguishable from the instant case. In *Liberty*, the moving party was put on notice of a potential conflict of interest by a deponent's statement made during deposition. As a result, the individuals on notice included the moving party's counsel. Here, the only individuals who would have been on inquiry notice dating back to 2012 were Ms. Matsumoto and Ms. Williams, both of whom were non-attorneys and therefore distinguishable from the sophisticated attorneys on notice in *Liberty*. Moreover, although the District produced documents in 2019 and 2020 showing correspondence between the District and BB&K from 2006 and 2007, the District has noted that such document productions were primarily the work of litigation support contractors, not District counsel themselves. Privilege reviews by the District's counsel were not triggered during this review, as no BB&K lawyers were on the list of District's counsel.

However, there is no indication, based on Ms. Matsumoto's declaration or any other evidence submitted, that Ms. Matsumoto "actually perceived" a conflict of interest in BB&K's representation; rather, her declaration merely states that BB&K never raised the issue of a conflict of interest or request a conflict waiver from the District. Matsumoto Dec., at ¶ 11. Moreover, Ms. Williams states that she believed BB&K's prior representation was "a non-issue" and did not pose a conflict at the time. Williams Decl., at ¶ 6. In fact, the District has submitted multiple declarations attesting that it did not actually perceive the conflict of interest until October 2021, when a review of pre-ISEO privileged documents revealed that talking points contemplating litigation related to the contamination at the Avalon School had been shared with BB&K during their prior representation. Knauft Decl., at ¶¶ 10–11; Tao Decl., at ¶¶ 3, 5; Matsumoto Decl., at ¶ 10.

Once this defect had been perceived, the District immediately attempted to remedy the issue by alerting BB&K of the conflict and engaging in discussion via video conferences and written correspondence. *See* Joint Report RE: Rule 7-3 Conference (ECF No. 118). The parties were ultimately unable to reach a resolution after over a month of correspondence and three meet and confer sessions. *Id.* The District filed this instant Motion to Disqualify on January 18, 2022—less than three months after it first "actually perceived" of the conflict. *See* Memo, at 1. Courts have regularly found that such a delay is neither inexcusable nor sufficient to deny the disqualification motion. *See, e.g.*, *Miller v. Alagna*, 138 F. Supp. 2d at 1259 (finding that a six-month delay did not constitute inexcusable delay sufficient to deny disqualification motion); *Earl Scheib, Inc. v. Superior Court*, 61 Cal. Rptr. 386 (1967) (holding that four-month delay should not have precluded trial court from considering motion for disqualification).

Accordingly, the Court finds, in the alternative, that to the extent that the BB&K and the City met their burden of making out a prima facie case, the District has successfully met its burden of justifying delay.

## IV. Conclusion

In light of the foregoing, the Court hereby GRANTS the District's Motion to Disqualify. The City is directed to obtain new counsel within sixty (60) days of the date of this Order. The parties are ORDERED to file a joint status report, and to include a current copy of the Schedule of Pretrial and

Trial Dates Worksheet attached to the Court's Order Setting Scheduling Conference, within ninety (90) days of this Order.[9] The parties are required to meet and confer regarding their availability prior to submitting this joint status report.

      IT IS SO ORDERED.

Dated: March 22, 2022

                              MAAME EWUSI-MENSAH FRIMPONG
                                    United States District Judge

---

[9] The Order Setting Scheduling Conference is available on Judge Frimpong's website. The Court will schedule Final Pretrial Conferences and Trials no earlier than August 2022.