1  Gregory D. Trimarche (SBN 143686) gtrimarche@cookseylaw.com
   Jonathan R. Medina (SBN 272308) jmedina@cookseylaw.com
2  **COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
   A Professional Corporation
3  535 Anton Boulevard, Tenth Floor
   Costa Mesa, California 92626-1977
4  Telephone: (714) 431-1100
   Facsimile: (714) 431-1119
5
   Attorneys for Defendant, Counterclaimant/Cross-Claimant
6  SANTA CATALINA ISLAND COMPANY

7  Joshua N. Levine, Esq. (SBN171840) jlevine@boothllp.com
   Paul D. Rasmussen, Esq. (SBN 201680) prasmussen@boothllp.com
8  **BOOTH, LLP**
   11835 W. Olympic Boulevard, Suite 600E
9  Los Angeles, CA 90064
   Phone: (310) 641-1800
10 Facsimile: (310) 641-1818

11 Attorneys for Defendant, Counterclaimant/Cross-Claimant
   CITY OF AVALON
12
                    UNITED STATES DISTRICT COURT
13
                    CENTRAL DISTRICT OF CALIFORNIA
14

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT, | Case No.: 2:19-cv-01139-MEMF-AS |
| Plaintiffs, | Hon. Maame Ewusi-Mensah Frimpong |
| v. | **CITY OF AVALONS MOTION IN LIMINE # 1 TO EXCLUDE, IN WHOLE OR IN PART, NEAL BRODY FROM TESTIFYING AS TO PLAINTIFFS PAST OR FUTURE DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| SANTA CATALINA ISLAND COMPANY and CITY OF AVALON, | |
| Defendants. | Hearing Date: February 7, 2024<br>Time:          9:00 a.m. |
| AND ALL RELATED CROSS-ACTIONS | Complaint Filed: February 14, 2019<br>Trial Date:          March 25, 2024 |

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff has designated Neal Brody as a rebuttal expert to provide an opinion as to Plaintiff's past and future costs in response to the report issued by Gary Hokkanen. However, Brody is rebutting claims that Hokkanen never made as Hokkanen did not offer an opinion on Plaintiff's past and future costs. Plaintiff is therefore improperly trying to introduce case-in-chief testimony disguised as a rebuttal opinion. Moreover, the cost information offered by Brody is irrelevant and prejudicial as no future costs can be recovered in a continuing nuisance claim and Brody's past cost claim includes costs barred by the ruling on the initial motion for summary judgment on this matter.

To ensure that there is no confusion as to the scope of Hokannen's testimony, Defendants have affirmatively represented that Hokannen will not offer an opinion, directly or indirectly, on past costs or future costs at the Jury Trial in this matter. Accordingly, to the extent that the Court is disinclined to exclude Brody's testimony outright, Defendants seek an order that Brody cannot testify until after Hokannen has testified and the Court has determined that Brody's testimony would be proper rebuttal.

During the meet-and-confer leading up to this motion, Plaintiff conceded that they would not call Brody as an expert witness, but instead intended to call him as a fact witness to testify as to Defendants' damages. The attempt to re-cast their expert as a factual witness to offer an affirmative opinion as to Plaintiff's damages, after having failed to properly disclose this opinion, is improper. Brody is not a fact witness with any personal knowledge of Plaintiff's damages. He is a third party consultant, hired expressly by litigation counsel to review documents to form an expert opinion. He was treated by Plaintiff as such throughout this litigation and was specifically designated as an expert. Even during his expert deposition, Plaintiff instructed him not to reveal information as to what other work he performed for Plaintiff on the basis of privilege.

If Plaintiff wanted to have their expert Neal Brody testify about damages, it should have disclosed him as an affirmative expert on the subject. Plaintiff's attempt to have their expert provide his expert opinion under the guise of fact opinion is improper.

## II. STATEMENT OF FACTS

On February 14, 2019, Plaintiff filed a Complaint against Defendants. Plaintiff retained Neal Brody as a consultant on September 11, 2017, almost a year and a half before they filed their complaint. Brody's assigned task was to "review and analyze LBUSD's potential claims and to develop and substantiate backup accounting data supporting them." (Declaration of Joshua Levine ("Levine Dec."), Ex. D). Brody has continually worked on this project since his initial retention in 2017. (Levine Dec., Ex. C at 75:11-14). His firm has billed at least $846,000 thus far on this task. (*Id*. at 74:20-75:7).

In May 2021, Defendants noticed the deposition of Plaintiff's 30 (b) (6) witness with respect to several categories including its damages. (Levine Dec., Ex. E). Subsequently produced invoicing shows that from May 2021 through October 2021 (the months leading up to the 30 (b) (6) deposition), Brody billed $128,698 analyzing Plaintiff's cost documentation. (Levine Dec., Ex. D and ¶ 5). Despite this, Plaintiff designated Alan Reising instead of Neal Brody as its damage witness.

At his October 28, 2021, deposition, Reising testified that Plaintiff's damages had been calculated by personnel in Plaintiff's accounting and facilities departments working under his supervision. (Levine Dec., Ex. B at 184:17-185:19). Reising stated that the work had been performed by "various different staff" in his department, and identified several individuals who performed work, but did not disclose the work performed by Mr. Brody or even that an outside firm had been tasked with performing this work. (Levine Dec., Ex. B at 184:17-185:15).

The deadline for designation of affirmative experts was November 23, 2021. Plaintiff did not designate Brody as one of their affirmative experts on that date. Rather, Plaintiff waited until December 14, 2021, when it designated Brody as a rebuttal expert. (Levine Dec., ¶ 8).

Brody in the rebuttal report opined that Plaintiff will incur significant future costs, including 'School Rebuilding Environmental Costs" of between $26 and $87 million, and that it had incurred $3,686,705 in past costs. (Levine Dec., Ex. A at p 12 and Table 2). The Brody report provided these cost opinions purportedly to respond to the expert report of Gary Hokkanen. (Levine Dec., Ex. A at p. 4). However, and as discussed further in this motion, the Hokkanen report offered no

3

1 opinion whatsoever as to the cost of any future work that may be performed at the Site and did not
2 purport to offer an opinion as to the total amount of Plaintiff's past costs.  (Levine Dec., Ex. G and ¶
3 9).
4    Moreover, Defendants have advised Plaintiffs that they do not intend to have Hokannen offer
5 any opinions during the upcoming Jury trial other than Opinion 1 (which addresses only
6 contamination at other School Sites) and specifically they do not intend to have Hokkanen offer any
7 opinion to the jury regarding past or future costs.  (Levine Dec., ¶ 10).  Accordingly, Brody's
8 rebuttal expert opinion as to costs is now moot as there is no relevant opinion that will be offered for
9 him to rebut.  (Levine Dec., ¶ 10)
10   In the meet-and-confer leading up to this motion, Plaintiff agreed that they would not attempt
11 to have Brody offer any "expert" opinion to the jury on costs.  However, Plaintiff stated that they
12 intended to have Brody testify as a "fact" witness as to what Defendants' costs were.  (Levine Dec.,
13 ¶ 11)  Moreover, Plaintiff further stated that Brody would not only testify as to the damages that he
14 previously included in his expert report, but that he would "update" these damages to include even
15 further damages at trial.  (Levine Dec., ¶ 11)

16 **III.    DISCUSSION**

17    **A.    Brody's Opinion Regarding Plaintiff's Future Costs Must Be Excluded.**

18    Brody opined that the future costs for implementing a Phase II Remedial Action Plan for Hot
19 Spots is $400,000, that the costs of compliance with a soil management plan is $100,000 a year,
20 "School Rebuilding Environmental Costs will be $26 million to $87 million, and there is an unknown
21 amount of other future environmental costs. (Levine Dec., Ex. A at p 12 and Table 2).
22    Brody's opinions as to future costs must be excluded.  First, while Brody claims to be rebutting
23 Hokannen's report, Hokannen never offered an opinion as to future costs, and the opinion is therefore
24 not a proper rebuttal opinion.   Defendants have specifically stated that they do not intend to have
25 Brody offer opinion as to Plaintiff's future costs at trial and it would be improper to allow Brody to
26 rebut an opinion that is not being offered by Defendants.  Second, any opinion on future costs would
27 be irrelevant and prejudicial as such costs are not recoverable in a continuing nuisance action.
28

4

### 1. Plaintiffs Cannot Offer A Rebuttal Opinion on Future Costs As Defendants Offered No Opinion on Future Costs.

Under Rule 26(a)(2)(D)(ii), rebuttal expert testimony is permitted after the parties' initial disclosures only where it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26. Such testimony "cannot be used to advance new arguments or new evidence." *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17–18 (D.D.C. 2013) (citations omitted); *see also Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* No. 03 C 7713, 2005 WL 1300763, at *2 (N.D.Ill. Feb. 22, 2005) ("The rebuttal report is no place for presenting new arguments."). Rather, rebuttal testimony must "explain, repel, counteract, or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir.2005) (internal quotation omitted). **"**Where a party attempts to designate as a "rebuttal" expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." *Blake v. Securitas Sec. Servs., Inc.,* 292 F.R.D. 15, 17–18 (D.D.C. 2013), citing *Donell v. Fidelity Nat'l Title Agency of Nev.,* No. 07–00001, 2012 WL 170990, at *4 (D.Nev. Jan. 20, 2012).

Here, Brody justified his future cost opinions by referencing a statement in Hokkanen's report "that work performed at Avalon School under the [2012 Department of Toxic Substances] Order is largely complete." (Levine Dec., Ex. A at p.13). Brody argues that this statement is misleading as Plaintiff will need to implement Phase 2 of the current Remedial Action Plan ("RAP") and comply with a Soil Management Plan ("SMP"). (Levine Dec., Ex A at p. 13-14). Brody then spends several pages of his report estimating the future costs of complying with the RAP and SMP. (Levine Dec., Ex. A at 14-19).

Brody's report goes beyond "directly contradicting and explaining material issues" contained in Hokkanen's report. The statement purportedly relied upon by Brody was one sentence contained in the explanation of Hokannen's opinion No. 4 that "Once the implementation of remediation described in the [RAP] is complete, the DTSC is expected to approve completion of the actions required in the March 2012 Order and allow the continued safe use of Avalon School with the [SMP]

1  and the Land Use Covenant in place." (Levine Dec., Ex. G at p. 20-22). To support this opinion, Hokkanen recounted the remedial work that had been performed. Notably, Brody did not suggest that Plaintiff will not need to complete a Phase II of the RAP or that Plaintiff will not need to comply with a SMP. Hokannen did not offer an estimate as to the costs of the implementation of the Phase 2 of the RAP or compliance with the SMP. (Levine Dec., Ex. G and ¶ 10).

Brody's opinion does not "explain, repel, counteract, or disprove" the opinion of Hokannen. Rather, Brody seems to agree with Hokannen's opinion-the work required under the 2021 Order is done, save for the implementation of Phase 2 and compliance with SMP. As Hokkanen agreed that this further work would need to be done, and offered no opinion as to how expensive it would be to do so, Brody does not rebut his opinion by offering an opinion as to how much this work will cost.

Moreover, Defendants have informed Plaintiff that Hokkanen will not provide Opinions 2 through 4 during the jury trial in this matter, nor any opinion regarding Plaintiff's past or future costs. "A rebuttal expert witness may only testify after the opposing party's initial expert witness testifies." *Donell v. Fid. Nat. Title Agency of Nevada*, No. 2:07-CV-00001-KJD, 2012 WL 170990, at *5 (D. Nev. Jan. 20, 2012) (citing *Linder v. MeadowGold Dairies, Inc.*, 249 F.R.D. 625, 636 (D.Haw.2008)). . Accordingly, to the extent that the Court is not inclined to exclude Brody's testimony outright, Defendants request that Brody be precluded from testifying until such time that Hokannen has testified and Plaintiff has made a showing that Brody's opinions as to future costs rebuts testimony provided by Hokannen at trial.

### 2.      Opinions of Future Costs Are Irrelevant And Prejudicial.

In continuing nuisance cases, "Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." *Gehr v. Baker Hughes Oil Field Operations, Inc.,* 165 Cal. App. 4th 660, 667 (2008) (citations omitted); *Baker v. Burbank–Glendale–Pasadena Airport Authority* 39 Cal.3d 862, 868–869 (1985); *Santa Fe P'ship v. ARCO Prod. Co.,* 46 Cal. App. 4th 967, 976 (1996). Accordingly, the amount of future costs are not at issue.

Brody's opinion as to the amount of future costs should be excluded as irrelevant as the jury will not be asked to make such a determination. Fed. R. Evid. 401. Even if such evidence were

relevant, it should still be excluded as prejudicial as a jury may improperly take into account future damages in considering whether to award past damages.  Fed. R. Evid. 403.  For these additional reasons, Brody's opinion as to future costs must be excluded.

### B. Brody's Opinion Regarding Plaintiff's Past Costs Must Be Excluded.

Brody offers the opinion that a total of $3,686,705 in Order Compliance Costs were incurred by Plaintiff. (Levine Dec, Ex. A at p 12 and Table 2)   This opinion is excludable as the Hokkanen report does not offer an opinion as to the total of Plaintiff's past costs, Hokkanen will not offer an opinion on Plaintiff's past costs at trial, and Brody includes, in his calculations, costs that are barred based on the prior grant of summary adjudication.

#### 1. Hokkanen Did Not And Does Not Intend To Offer An Opinion As To The Total Amount Of Plaintiff's Past Costs

As discussed above, rebuttal testimony must "explain, repel, counteract, or disprove evidence of the adverse party."  *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir.2005) (internal quotation omitted).   Here, Brody claims that his past cost opinion corrects errors on Hokkanen's Exhibit "C".  (Levine Dec., Ex. A at p. 12)

Exhibit "C" to the Hokkanen Report is a work sheet showing and tabulating invoices that he reviewed.   (Levine Dec., Ex. G).  It supported a portion of Hokannen's opinion that "The City of Avalon has paid $723,449.75 and the Island Company paid $799,472.77 for the shared consultants..."
 (Levine Dec., Ex. G at p. 19).   Hokkanen does not provide, in any of his four listed opinions 1 through 4, an opinion on what Plaintiff's total past costs were.  (Levine Dec., Ex. G at p. 18-22).  Moreover, Defendants do not intend to have Hokannen discuss invoices at all during the Jury Trial, as this information is only relevant as part of Defendants' CERCLA Cross-Claim against Plaintiff (Defendants' own costs are not at issue in the Jury Trial).   Brody should be precluded from testifying about past costs until Hokkanen first testifies and a determination has been made as that Hokkanen offered an opinion at trial as to past costs that opens the door for rebuttal from Brody.

### 2. Brody's Testimony About Prior Costs Would Violate The Partial Summary Judgment Order

In the order on Defendants' initial motion for partial summary judgment, the Court ruled that "Plaintiff will not be able to recover costs incurred or damages sustained before February 14, 2016 (more than three years before Plaintiff filed its Complaint on February 14, 2019)." (Levine Dec., Ex. I at p. 18). Brody's past cost opinion includes costs going back to March 2012. (Levine Dec., Ex. A (Exhibit D to Brody Rebuttal Report)). Opinions as to these costs would be both irrelevant and prejudicial.

### C. Brody cannot present his undisclosed expert opinions as factual opinions.

Plaintiff, during the meet-and-confer, essentially conceded that Brody's opinions as to past and future damages were improper rebuttal, and that it would not be offering these rebuttal opinions at trial if Brody did not first offer opinions two through four. However, Plaintiff pivoted to state that Brody would be testifying as a "fact" witness on Plaintiff's damages. Moreover, Plaintiff indicated that Brody would go beyond his improperly disclosed cost opinions presented in his rebuttal report, and present even further costs.

Brody is not a fact witness. He is not an employee of Plaintiff and has no personal knowledge of what its costs were. He was hired by litigation counsel, not Plaintiff. (Levine Dec., Ex. D). His involvement in this matter was explicitly as an expert consultant. He was provided cost documentation by counsel and he used his expertise to analyze this cost documentation. He billed almost a million dollars as part of doing his expert work and was explicitly designated as an expert by Plaintiff. It is disingenuous for Plaintiff to now state that he is not an expert.

The opinion that he intends to give is expert testimony. It requires expert testimony to ascertain what costs are connected to the alleged nuisance. The invoices produced in this matter do not clearly indicate what costs are related to the continuance and what are related to other items. Invoices were produced which on their face reference school sites other than the Avalon School Site, or construction, such as the installation of an air conditioning system, then do not seem to relate to environmental work. As one example, Plaintiff produced an invoice for $65,825, which, on its face, covers the cost of a "shade shelter", "furniture replacement" and HVAC work at a different school.

1  (Levine Dec., Exhibit "J").  Plaintiff produced dozens of such ambiguous invoices.  (Levine Dec., ¶

2  12).  Any witness on costs will need to segregate relevant costs and determine that they relate to the

3  continuing nuisance--a determination that requires some expertise.  Similarly, testimony about costs

4  requires some assessment that these costs are reasonable.  In fact, this is likely the core of Brody's

5  original role.  Such a determination also requires expertise.

6  Brody does not have any personal knowledge of facts relevant to this case.  The facts that he

7  knows are from documents that were provided to him by counsel, along with the analysis that he has

8  done of these documents.  If Brody is truly only testifying about facts, and not adding any opinion

9  or addition to these facts, then one questions why Plaintiff would need him at all—Plaintiff does not

10 need to spend $525 an hour to have a witness testify as to purely factual matters.  Moreover, even if

11 Brody was somehow confined to just speaking about "facts", with nothing added, the risk that he

12 would slip in his opinion during his testimony is too high to countenance.  At the very least, by

13 presenting Brody, who presumably would speak about his credentials while testifying, to testify

14 about damages Plaintiff would be implicitly burnishing the reliability of these damages through

15 Brody.

16 Moreover, the designation of Brody as a fact witness is inconsistent with the manner that

17 Plaintiff has treated Brody throughout this litigation.  If Brody was just a fact witness on damages,

18 Plaintiff should have designated him as their 30 (b) (6) designee, or, at least, not concealed the fact

19 that Brody was performing a damage analysis during the 30 (b) (6) deposition.  When a party fails to

20 comply with its Rule 30(b)(6) obligations, Rule 37 allows courts to impose various sanctions,

21 including the preclusion of evidence. *See* Fed.R.Civ.P. 37(b)(2)(B); *see, e.g., Commodity Futures*

22 *Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 770–71 (9th Cir.1995).

23 Moreover, in this litigation, Plaintiff consistently took the position that any work performed

24 by Brody on this project, other than what specifically related to his rebuttal opinion was privileged.

25 Throughout his deposition, Plaintiff instructed Brody not to provide any information about the work

26 that he performed other than the work that specifically related to his rebuttal opinion.  (Levine Dec,

27 Ex. C at 64:8-11 (" I again counsel you not to disclose any privileged information beyond

28

1  information directly relevant to your limited role as a testifying rebuttal witness in this matter"),

2  60:16-19, 61:11-13; 69:6-8, 71:145-72:2, 72:22-24)).   Similarly, while Plaintiff provided Brody's

3  invoices before the deposition, such invoices were heavily redacted, and the invoices were coded as

4  "litigation".  (Levine Dec., Ex. E at 466154).   In short, throughout discovery, Plaintiff treated Brody

5  as a litigation consultant, and restricted discovery on him to subjects that were directly relevant to its

6  role as a testifying rebuttal witness.

## IV.    CONCLUSION

Brody's opinion is improper as it purports to rebut affirmative opinions that were never provided and concerns costs that are not at issue in the Jury Trial.  Plaintiff cannot save its failure to designate Brody as an affirmative expert by recasting him as a fact witness.   The Court should therefore exclude Brody's testimony regarding costs in its entirety, or, alternatively, order that Brody cannot testify until after Hokannen has testified and the Court has determined that Brody's testimony would be proper rebuttal.

DATED:  January 10, 2024            COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

By: _____
GREGORY D. TRIMARCHE
JONATHAN R. MEDINA
Attorneys for Defendant,
Counterclaimant/Cross-Claimant
SANTA CATALINA ISLAND COMPANY

DATED:  January 10, 2024            BOOTH, LLP

By: _____*Joshua Levine*_____
JOSHUA N. LEVINE
PAUL D. RASMUSSEN
Attorneys for Defendant,
Counterclaimant/Cross-Claimant
CITY OF AVALON