Joshua Van Eaton (*Pro Hac Vice*)
jvaneaton@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
1900 N Street NW, Suite 100
Washington, DC
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

Attorneys for Plaintiff/Counterdefendant
Long Beach Unified School District

*[Additional Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>            Plaintiff,<br><br>      vs.<br><br>SANTA CATALINA ISLAND COMPANY and CITY OF AVALON,<br><br>            Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No. 2:19-cv-01139- MEMF (ASx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN**<br><br>Judge: Hon. Maame Ewusi-Mensah Frimpong<br><br>Hearing Date: February 7, 2024<br>Time: TBD<br>Court Room: 8B<br><br>Pre-Trial Conference: March 6, 2024<br>Trial:   March 25, 2024 |

1

## I. INTRODUCTION

The following proffered expert opinions of Gary Hokkanen are unreliable—and in some cases flatly wrong as Mr. Hokkanen now admits:

- The source of contamination in soil at the "Avalon School"[1] [Opinions 1 and 3 of Mr. Hokkanen's November 23, 2021 expert report].
- The amount and recoverability of Defendants' Santa Catalina Island Company and City of Avalon ("Defendants") response costs [Opinion 2 and Opinion 3].
- What DTSC might do in the future [Opinion 4].

Plaintiff Long Beach Unified School District ("the District") respectfully requests that the Court exclude from both the jury and bench trial each of Mr. Hokkanen's Opinions 1, 2, 3, and 4, and any testimony regarding those opinions. Allowing Defendants to offer Mr. Hokkanen's unreliable testimony would abdicate the court's critical gatekeeper duty under both *Daubert* and the Federal Rules of Evidence.

Mr. Hokkanen's back-of-the-envelope opinion as to potential sources of contamination at the Avalon School [Opinion 1 and 3] falls short of even the "junk science" courts take great care to keep from entering the courtroom under the guise of expert testimony. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 598-93, 113 S. Ct. 2786 (1993) ("*Daubert I*"). It is purely speculative, and is not supported by any science, let alone "sound science," as required by the *Daubert* standard set out by the Supreme Court. Mr. Hokkanen's opinion essentially boils down to the following: because some of the contaminants at Avalon School were also found at some other District schools around Greater Long Beach, the contaminants at Avalon must be due to Avalon School activities. He offers this opinion even though none of the other schools referenced in his report have the same profile of contaminants of concerns ("COCs"), and many

---

[1] In his November 23, 2021 report, Mr. Hokkanen refers to "Avalon School" but does not define the term. Declaration of Joshua Van Eaton in Support of Plaintiff's Motion in Limine to Exclude Expert Testimony of Gary Hokkanen ("Van Eaton Decl.") Ex. 1. At his deposition, Mr. Hokkanen testified the term generally refers to OU1 and OU2A, but not OU2B. Van Eaton Decl. Ex. 4 at 21:13-22:9. Mr. Hokkanen further testified that the reference at page 17 of his report that OU2B included the ballfield was erroneous and that the ballfield is part of OU2A not OU2B. Van Eaton Decl. Ex. 4 at 20:24-21:12 (explaining that the error was due to "[p]oor review on [his] part.").

2

of the other schools have other contaminants not found at the Avalon School. Moreover, he admittedly did not evaluate specific potential contaminant sources at those schools or Avalon, he did not evaluate or compare any actual data, and he did not consider the large record of evidence regarding the sources of contaminants at Avalon School. Indeed, Mr. Hokkanen admitted that a part of his opinion—that contamination at the Avalon school is not attributable to Defendants' activities—is flatly wrong and in contradiction to other defense expert testimony.

Mr. Hokkanen's remaining opinions fare no better. His cost opinions [Opinion 2 and 3] purport to set forth total the amount of Defendants' legally recoverable response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). But Mr. Hokkanen admitted he did not actually distinguish recoverable response costs from nonrecoverable response costs. His purported expert testimony is essentially fact testimony regarding his tabulation of invoices provided by defense counsel with no actual analysis; it should not be held out as otherwise. Finally, Mr. Hokkanen's Opinion 4 is also unreliable. He is unqualified to guess how DTSC may or may not exercise its decision-making authority with respect to approving completion of actions required under DTSC's March 2012 DTSC Imminent and Substantial Endangerment Order ("DTSC Order"). And even if Mr. Hokkanen were qualified, such speculative expert testimony should be excluded under *Daubert*. *Daubert I*, 509 U.S. at 590 (expert testimony must be supported by "more than subjective belief and unsupported speculation").

Another session of this Court recently excluded Mr. Hokkanen's testimony in an environmental contamination case with similar facts. In *Santa Clarita Valley Water Agency v. Whittaker Corporation*, Mr. Hokkanen offered an opinion about potential sources of contamination found in groundwater wells without conducting any actual analysis or investigation into whether the sources could have caused the contamination beyond reading another report, which did not itself establish potential sources of contamination. No.: 2:18-cv-06825-SB-RAO, 2021 WL 4338973, at *4-5 (C.D. Cal. Aug. 13, 2021). In excluding Mr. Hokkanen's opinion, the court concluded that "[s]uch a cursory analysis appears to fall short of

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (cleaned up).  So too here.  All four of Mr. Hokkanen's purport expert opinions fall short of the legal standard for admissibility of expert opinions.

Defendants have represented that they will not offer Mr. Hokkanen's testimony on Opinions 2 through 4 at the jury trial. Van Eaton Decl. Ex. 12.  But Mr. Hokkanen's testimony should be excluded in full from both the jury and bench trial.

## II.   LEGAL STANDARD

Defendants have the burden of establishing the admissibility of their expert's testimony under Federal Rule of Evidence 702. *E.g.*, *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). An expert may only testify where a preponderance of the evidence establishes that:

a. The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
b. The testimony is based on sufficient facts or data;
c. The testimony is the product of reliable principles and methods; and
d. The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (as amended Dec. 1, 2023).

Trial courts exercise vigilance in assessing the admissibility of expert testimony. *Daubert I,* 509 U.S. at 595.  The trial judge adopts this "gatekeeper" role to prevent "junk science" from entering the courtroom under the guise of expert testimony.  *Id.* at 589-93; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999)).  In doing so, the court conducts "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," as well as "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert I*, 509 U.S. at 592-93.

Expert testimony "must be supported by more than subjective belief and unsupported speculation," and must be supported by the facts of the case. *Daubert I*, 509 U.S. at 590; *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); *Daubert v. Merrell Dow Pharm.*,

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

*Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*") (an expert opinion must be based on "sound science," not speculation, subjective belief, or conjecture, to be reliable). Additionally, an expert's testimony must have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999) (citation and alterations omitted). An expert's testimony is unreliable if it exceeds the scope of the expert's expertise. *Gable v. Nat'l Broad. Co. Inc.*, 727 F. Supp. 2d 815, 833–34 (C.D. Cal. 2010) *aff'd sub nom. Gable v. Nat'l Broad. Co., Inc.*, 438 Fed. Appx. 587 (9th Cir. 2011) (citing *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000).

### III. ARGUMENT

**A. Mr. Hokkanen's opinion that the District must have contaminated its own property because some contamination has been found at some other LBUSD schools [Opinion 1 and 3] is unreliable under Rule 702.**

Without conducting any scientific analysis, comparing any available data, or purporting to employ any reliable methodology, Mr. Hokkanen casually concludes in Opinions 1 and 3 that the Avalon School caused the contamination at its property because some of the contaminants at issue in this case have been discovered at some of the District's other school properties. That is the entire extent of Mr. Hokkanen's analysis. And he draws this connection even though <u>none</u> of the dozen schools mentioned in his report (or any of the District's eighty-three other schools, for that matter) have the same profile of contaminants of concern as the Avalon School. Van Eaton Decl. Ex. 1 at pp. 9-16; Ex. 4 at 233:24-234:6. Mr. Hokkanen was unable to stand by the opinions in his report, as demonstrated by extensive efforts during his deposition to reframe his causation opinions as stating a mere correlation, and his clear admission that he was wrong to opine that Defendants' activities are not a source of contamination at the Avalon School. Mr. Hokkanen's wholly unsupported opinions—no matter how abridged or "corrected"—have no place in the courtroom.

**1. Mr. Hokkanen fails to apply any scientific methodology in support of his opinions.**

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

Mr. Hokkanen draws a connection between school activities and contamination at the Avalon School based on a cursory "review of the school properties that have been in DTSC's Brownfields Restoration and School Evaluation Branch," which purportedly showed some of the contaminants detected at Avalon School have been found at some of other LBUSD schools. Van Eaton Decl. Ex. 1 at pp. 18-19. He does not identify—much less apply—any established scientific methodology to connect the sources of contamination at other District schools to a conclusion that Avalon School activities caused the contamination at the site. An opinion that fails to "explain any legitimate and/or reliable method . . . used to independently evaluate the data" should be excluded. *Gunaratna v. Dennis Gross Cosmetology LLC*, Case No. CV 20-2311-MWF, 2023 WL 2628620, at *11 (C.D. Cal. Mar. 15, 2023) (citing Fed. R. Evid. 702).

Nor does Mr. Hokkanen even try to cobble together any sort of scientific reasoning to bridge that gap. Mr. Hokkanen did not consider specific sources of contamination at the other District schools, or the Avalon School. Van Eaton Decl. Ex. 4 at 214:3-6 ("I haven't looked at specific sources. That wasn't part of my scope at Avalon, or the other schools, quite frankly."). Mr. Hokkanen did not compare the concentrations of contaminants at other District schools with available data to concentrations at the Avalon School. Van Eaton Decl. Ex. 4 at 220:15-19. He did not account for the absence of contamination at the vast majority of the District's eighty-four schools. He did not conduct any form of statistical analysis. Van Eaton Decl. Ex. 4 at 220:22-24. In short, Mr. Hokkanen did not conduct any scientific analysis at all.

As in *Santa Clarita Valley Water Agency*, Mr. Hokkanen's cursory review, devoid of actual analysis or investigation into whether specific school activities could have caused the contamination at the Avalon School, is wholly lacking in the "level of intellectual rigor that characterizes the practice of an expert in the relevant field" and should be excluded. 2021 WL 4338973, at *4-5 (C.D. Cal. Aug. 13, 2021) (cleaned up).

### 2. Mr. Hokkanen's opinions ignore the significant record of environmental data available for the Avalon School site.

Moreover, Mr. Hokkanen failed to consider any of the vast scientific and historical record

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

1  at the Avalon School, as he reiterated during his deposition. Van Eaton Decl. Ex. 4 at 240:21-23
2  ("I did not look at all of the detail of the Avalon school and the soil data and such."). An
3  expert's opinion is unreliable if it fails to consider the full set of facts in the case. *E.g.*, *Smith v.*
4  *Pac. Bell Tel. Co., Inc.*, 649 F. Supp. 2d 1073, 1096-1097 (E.D. Cal. 2009) (citing *Jones v. Otis*
5  *Elevator Co.*, 861 F.2d 655, 662 (11th Cir.1988)) (refusing to admit expert testimony in part
6  because the report was based on incomplete facts). Where an expert "fail[s] to sufficiently
7  consider the relevant underlying facts necessary to support his opinions and conclusions," the
8  testimony is unreliable and not admissible. *Powell v. Anheuser-Busch Inc.*, No. CV 09-729-JFW
9  (VBKX), 2012 WL 12953439, at *7 (C.D. Cal. Sept. 24, 2012) (citing *Gen. Elec. Co. v. Joiner*,
10  522 U.S. 136, 146 (1997)).

11  Here, Mr. Hokkanen somehow concludes that contamination at the Avalon School is
12  likely attributed to school activities, but fails to explain why burned ash and COCs have been
13  discovered <u>under</u> the original school buildings that predate those activities. Van Eaton Decl. Ex.
14  5 at pp. 8, 17.[2] Indeed, Mr. Hokkanen testified that he "[hadn't] really thought about" whether
15  there could be a pathway for ash and other contaminants released from a school incinerator to
16  travel under a pre-existing building. Van Eaton Decl. Ex. 4 at 104:4. Likewise, Mr. Hokkanen's
17  report points to purported school activities such as use of lead-based paint as a likely source of
18  lead contamination at the site. But measurements of lead were found in soils <u>under</u> the
19  foundations of the earliest school buildings at the Avalon School. Van Eaton Decl. Ex. 5 at pp. 8-
20  13; 17; Figure 4. Mr. Hokkanen testified that his opinions about the source of lead-based paint at
21  the Avalon School are not supported by any direct analysis of the Avalon school site. Van Eaton
22  Decl. Ex. 4 at 97:13-14; 98:17.

23  Additionally, Mr. Hokkanen's report features other District sites with organochlorine
24  pesticides ("OCPs") contamination from termiticide application and concludes that termiticide is
25  a likely source of COCs at Avalon. But Mr. Hokkanen fails to recognize in his report that OCPs

---

[2] For example, the original school buildings—the High School Building (1924), the Library (1927), and Elementary School Building (1930)—all predate incinerator use. Van Eaton Decl. Ex. 6.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

are not a COC at Avalon School. To the contrary, virtually all Avalon School soil samples analyzed for OCPs by remediation expert URS were non-detect for OCPs, as detailed in URS' June 2002 Remedial Investigation Report for the Avalon School—a report Mr. Hokkanen purportedly "considered" in preparing his own report. Van Eaton Decl. Ex. 7 at p. 5-11; Van Eaton Decl. Ex. 1 at Exhibit A (identifying the June 2002 URS Remedial Investigation Report as a document Mr. Hokkanen considered). With the exception of one sample showing a pesticide not associated with termiticide use, all other pesticides tested as non-detect. Mr. Hokkanen's failure to analyze the available scientific data specific to the Avalon School renders his opinion unreliable and inadmissible.

### 3. Mr. Hokkanen's attempt to recast his causation opinions underscores their unreliability.

Recognizing his failure to provide *any* causal support, Mr. Hokkanen attempted to walk back his purported "causation" opinions during his deposition by reframing them as simply stating a general correlation disconnected from any specific source or activity. But that is not what his report states. Opinion 1 of Mr. Hokkanen's expert report states that lead, arsenic, dioxins/furans, arsenic, and PAHs at OU1 and OU2A are "likely associated with school activities, such as from the use of lead-based paint, construction materials, herbicides, termiticide and pesticide usage, and the burning of school garbage"; Opinion 3 states that "[e]vidence indicates that the COCs detected in soil at Avalon School are a result of school activities." Van Eaton Decl. Ex. 1 at pp. 18-19. Nonetheless, Mr. Hokkanen testified:

- "I made a correlation between [contaminants detected at some other schools] that and what's detected at the Avalon school. I haven't looked at specific sources. That wasn't part of my scope at Avalon, or the other schools, quite frankly." Van Eaton Decl. Ex. 4 at 214:2-6.

- "The correlation I made was between contaminants found at other schools and these contaminants, or COCs, found at Avalon school. I don't attribute where they came from. I just simply made the correlation between these different schools." Van Eaton Decl. Ex. 4 at 215:10-15.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

- "I'm simply saying it was likely school activities. I'm not being specific about what those school activities are. My -- again, the opinion is based on looking at the correlation of the contaminants we see at other schools and what we see at this school. I'm not drawing conclusions about sources and incinerator and what have you." Van Eaton Decl. Ex. 4 at 216:7-13.

Semantics cannot salvage Mr. Hokkanen's opinions. To the contrary, his testimony underscores one of many fatal flaws underlying his testimony—attempting to opine as to a potential source of contamination at Avalon without actually evaluating potential sources. Whether framed as correlation or causation, Mr. Hokkanen's purported expert opinions as to potential sources of contamination remain completely speculative and must be excluded.

    **4.    Mr. Hokkanen admits his opinion that contaminants at the Avalon School are not the results of activities attributed to the City of Avalon or the Island Company [Opinion 3] is wrong.**

Emblematic of the lack of any scientific rigor underlying his expert report, Mr. Hokkanen incorrectly alleged in Opinion 3 that "[e]vidence indicates that the COCs detected in soil at Avalon School are [not the result of] activities attributed to the City of Avalon or the Island Company." Van Eaton Decl. Ex. 1 at p. 19. Mr. Hokkanen offered this opinion without *any* scientific support and in direct contraction to opinions offered by multiple other defense experts attributing certain contaminants of concern at the Avalon School to City and Island Company activities. For example, defense experts Jeffrey Dagdigian and Stephen Washburn both admit that PAH contamination in OU2A is found in lampblack waste from the Defendants' Manufacturing Gas Plant activities. Van Eaton Decl. Ex. 8 at 152:9-13 ("We concluded that for lampblack there was a high correlation with PAHs and . . . that wherever we saw PAHs on the site they were likely related to the operation of the MGP site."); Van Eaton Decl. Ex. 9 at pp. 30-31. It was not until his deposition, years after he drafted his expert report, that Mr. Hokkanen conceded this portion of Opinion 3 is flatly wrong:

> I corrected [Opinion 3] earlier [in my deposition] by saying I did not look at all of the detail of the Avalon school and the soil data and such. I looked at Mr. Washburn's and Mr. Dagdigian's reports. They attributed PAH contamination on the ball field area close to the former manufactured-gas plant site to [Defendants' Manufacturing Gas Plant activities]. I did not state that in [my report], so I corrected that. . . . PAH is over on the

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

ball field. A good part of that is from [Defendants'] manufactured-gas plant site. I don't know all the details of how that happened, but those were the opinions and conclusion the[y] came to. So that would be the correction I would make [to Opinion 3].

Van Eaton Decl. Ex. 4 at 240:11-241:3; 242:17-24.

### B. Mr. Hokkanen's opinions as to the amount of Defendants' response costs [Opinion 2 and 3] are not supported by sufficient facts or reliable methodology.

To recover costs under CERCLA, a party must demonstrate, among other things, the costs were necessary costs of response. 42 U.S.C. § 9607(a). Mr. Hokkanen's Opinions 2 and 3 purport to do just that—he offers opinions as to Defendants' total costs in responding to the DTSC Order. Van Eaton Decl. Ex. 1 at p. 19. But Mr. Hokkanen did not employ any methodology, let alone reliable methodology, for determining response costs. Mr. Hokkanen's expert report provides no mention or analysis of what methodology he employed to distinguish response costs from nonresponse costs in formulating his opinions. When pressed on the issue at his deposition Mr. Hokkanen conceded that the cost figures in his report may contain non-response costs. Van Eaton Decl. Ex. 4 at 35:24-36:02 (testifying that he did not break out non-DTSC Order response costs). Additionally, Mr. Hokkanen's purported response cost figures for the City and Island Company set forth in Opinion 2 and 3 are identical to the cost figures listed in the 6th and 7th columns of Exhibit C to his report—an exhibit Mr. Hokkanen testified was merely "a compilation of the invoices that I received from counsel. The -- I did not represent one way or the other whether [individual line items were a] compliance cost". Van Eaton Decl. Ex. 3 at 47:13-17. Similarly, the corrected response cost figures for the City and Island Company Mr. Hokkanen testified to during his deposition were pulled directly from the 6th and 7th columns of Amended Exhibit C to his report. Van Eaton Decl. Ex. 4 at 67:15-68:5. Simply put, Mr. Hokkanen failed to reliably distinguish between response and non-response costs when formulating his opinion as to Defendants' response costs. His opinions regarding costs amount to nothing more than lay testimony as to the tabulation of invoices provided by counsel.

### C. Mr. Hokkanen's opinion as to how DTSC may exercise its decision-making authority [Opinion 4] is unreliable and should be excluded.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS

In his expert report, Mr. Hokkanen offers that "once the implementation of remediation described in the RAP is complete" DTSC will approve the cleanup work completed under the 2012 ISE Order. Van Eaton Decl. Ex. 1 at p. 20. But opining as to how DTSC might exercise its decision-making authority is inherently speculative, as Mr. Hokkanen himself seems to acknowledge. Van Eaton Decl. Ex. 4 at 72:24-73:6 ("I don't know what DTSC is going to do. . . . If they [approve the cleanup work] or not, you're right, I don't know. . . . If they approve that, again, I don't know that."). Such speculative opinions have no place in the courtroom.

Moreover, Mr. Hokkanen is unqualified to opine on DTSC's satisfaction as to the cleanup efforts conducted at the Avalon School property, as recently recognized by the Central District. In *Santa Clarita Valley Water Agency v. Whittaker Corp.*, the court excluded another expert's opinion that cleanup of a contaminated site had been performed "to the DTSC's satisfaction". 2021 WL 4338973, at *5 (C.D. Cal. Aug. 13, 2021). The court reasoned that "[n]either interfacing with a government agency for whom he never worked nor his general 'experience' and 'training' provides [the expert] with sufficient knowledge to opine as to that agency's satisfaction with Defendant's waste cleanup efforts." *Id.*. As in *Santa Clarita Valley Water Agency,* Mr. Hokkanen's sole purported qualification for opining on how DTSC might exercise its decision-making in the future is his prior experience interfacing with DTSC in completely unrelated matters. Van Eaton Decl. Ex. 4 at 72:24-73:6 ("That is my expectation based on my experience working with DTSC in the past."). Similar to the expert in *Santa Clarita*, Mr. Hokkanen has never worked for DTSC. Van Eaton Decl. Ex. 1 at Exhibit B. As the court reasoned in *Santa Clarita,* Mr. Hokkanen's prior experience in unrelated matters is insufficient to qualify to opine on DTSC's satisfaction as to the cleanup efforts in the future.

## IV. CONCLUSION

The District respectfully requests an order from the Court excluding Mr. Hokkanen's Opinions 1, 2, 3, and 4, and any testimony regarding those opinions, from both the jury and bench trial.

| | |
|---|---|
| Dated: January 10, 2024 | BEVERIDGE & DIAMOND, P.C. |
| | By: /s/ Joshua Van Eaton |

        Joshua Van Eaton (*Pro Hac Vice*)
        John C. Cruden (SBN 63476)
        1900 N Street, NW, Suite 100
        Washington, DC 20036
        Telephone: (202) 789-6000
        Facsimile: (202) 789-6190

        Gary Smith (SBN 141393)
        456 Montgomery Street, Suite 1800
        San Francisco, CA 94104
        Telephone: (415) 262-4000

        Michael Vitris (*Pro Hac Vice*)
        400 West 15th Street, Suite 1410
        Austin, TX 78701
        Telephone: (410) 230-1300

        Erika H. Spanton (*Pro Hac Vice*)
        600 University Street, Suite 1601
        Seattle, WA 98101
        Telephone: (512) 391-8000

        ATKINSON ANDELSON LOYA RUUD AND ROMO
        Scott Jordan Sachs (SBN 213737)
        12800 Center Court Drive, Suite 300
        Cerritos, CA 90703
        Telephone: (562) 653-3599
        Facsimile: (562) 653-3951

        WFBM, LLP
        Sage R. Knauft (SBN 194396)
        One City Boulevard West, Fifth Floor,
        Orange, CA 92868-3677
        Telephone: (714) 634-2522
        Facsimile: (714) 634-0686

        *Attorneys for Plaintiff/Counterdefendant*
        LONG BEACH UNIFIED SCHOOL DISTRICT

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; Case # 2:19-cv-01139-JFW-AS