Gregory D. Trimarche (SBN 143686) gtrimarche@cookseylaw.com
Jonathan R. Medina (SBN 272308) jmedina@cookseylaw.com
**COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
A Professional Corporation
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977
Telephone: (714) 431-1100
Facsimile: (714) 431-1119

Attorneys for Defendant, Counterclaimant/Cross-Claimant
SANTA CATALINA ISLAND COMPANY

Joshua N. Levine, Esq. (SBN171840) jlevine@boothllp.com
Paul D. Rasmussen, Esq. (SBN 201680) prasmussen@boothllp.com
**BOOTH, LLP**
11835 W. Olympic Boulevard, Suite 600E
Los Angeles, CA 90064
Phone: (310) 641-1800
Facsimile: (310) 641-1818

Attorneys for Defendant, Counterclaimant/Cross-Claimant
CITY OF AVALON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CATALINA ISLAND COMPANY and CITY OF AVALON,<br><br>Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS | Case No.: 2:19-cv-01139-MEMF-AS<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF GARY HOKKANEN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: February 7, 2024<br>Time: 2:00 p.m.<br><br>Complaint Filed: February 14, 2019<br>Trial Date: March 25, 2024 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants City of Avalon (the "City") and Santa Catalina Island Company ("ICO") (together, "Defendants") hereby submit the following opposition to the Motion of Plaintiff Long Beach Unified School District ("Plaintiff") to exclude the testimony of Defendants' expert Gary Hokkanen (Dkt. 254).

## I. INTRODUCTION

Defendants' expert Gary Hokkanen is an environmental consultant with over 40 years' experience. In his Opinion 1, he compared the environmental data generated from the work at Plaintiff's school site in Avalon (the "School Site") with environmental data generated at multiple other schools operated by Plaintiff, and he found there was similar contamination at the School Site and these other schools. The comparison of the environmental data of a subject site with other sites in which similar activities have taken place is a common methodology among environmental consultants. In fact, in this case, Plaintiff's expert, Peter Mesard, used the same methodology when he compared the School Site to three waste dumps scattered throughout California. While Plaintiff may disagree with Hokkanen's conclusions, its challenges go to the weight of his opinion, not whether it is admissible.

In Hokkanen's Opinions 2 and 3, Hokkanen did an invoice-by-invoice analysis to categorize costs incurred by Defendants in response to a 2012 Order by the Department of Toxic Substances Control ("DTSC"), using his substantial experience with environmental cost issues as a guide. His report included a worksheet showing exactly what invoices he reviewed, and exactly how he categorized each invoice. While Plaintiff speculates that Hokkanen may have included some non-response costs, Plaintiff does not identify a single erroneous cost. More fundamentally, to the extent that Plaintiff disagrees with Hokkanen's cost conclusions, this challenge goes to weight, not admissibility.

In Hokkanen's Opinion 4, Plaintiff challenges Hokkanen's opinion that the DTSC would approve the remedial work called for under the Remedial Action Plan ("RAP) once it was completed. After Hokkanen issued his report, the DTSC issued a Removal Action Certification, certifying that the remedial work has been completed and the site was being delisted as an active site. As such, Hokkanen's prior opinion that the DTSC was expected to take this action is now moot.

## II. **STATEMENT OF FACTS**

Gary Hokkanen is an engineer and hydrogeologist with over 40 years of professional experience in the development, evaluation and implementation of investigations and response actions at environmental contamination projects and environmental-related litigation support. (Declaration of Gary Hokkanen ("Hokk. Dec."), ¶ 2 and Exhibit "A" (Curriculum Vitae)).

Hokkanen obtained a Bachelor of Science degree in Civil Engineering, with an emphasis on environmental engineering, from the University of Minnesota in 1980. Subsequently, he performed graduate work in the field of contaminant hydrogeology at the University of Waterloo, from which he obtained a Master of Science Degree in 1984. (Hokk. Dec., ¶ 3).

Professionally, Hokkanen has worked on a wide variety of projects relating to the investigation and remediation of contaminated property, with a focus on soil and groundwater contamination. He began his professional career in the public sector, working as a staff engineer for the Environmental Protection Agency (Region 9). Subsequently, he has worked for numerous environmental consulting firms. He has been the Project Manager or Principal-in-Charge of the investigation and remediation of contaminated sites throughout the United States and Canada. His investigation and remediation work at over 100 sites has involved characterization of groundwater flow systems; characterization of contaminated soil and groundwater; analysis of contaminant fate and transport; development of feasibility studies; selection and

design of soil, groundwater, and sediment remedial actions; agency negotiations; and technical observation of work performed by potentially responsible parties. Additionally, he has significant experience with evaluating costs for environmental projects, including decades of experience forecasting, budgeting, and reviewing costs of such projects. Approximately 15 years ago, Hokkanen also began acting as an expert in environmental litigation and has testified at trial or by deposition in over 20 environmental cases. (Hokk. Dec., ¶ 4).

In this matter, Hokkanen reviewed the environmental reports relating to the School Site. He then reviewed a voluminous amount of material relating to environmental conditions at other Plaintiff sites, including environmental investigations of these other sites, and guidance documents issued by the DTSC regarding investigation of environmental conditions at schools. He compared the environmental findings of these other Plaintiff sites to the School Site and noted the similarities between contamination found at the School Site and that found in multiple schools operated by Plaintiff, which suggested a likely association between the operation of a school and these contaminants. Ultimately, Hokkanen issued Opinion 1, where he detailed the comparison sites at which he looked, and the basis for his drawing a link between those sites and the School Site. (Hokk. Dec., ¶ 5).

Hokkanen further reviewed invoicing sent to Defendants during the time period that Defendants and Plaintiff were jointly responding to a 2012 DTSC Order and calculated the amount of payments made by Defendants in order to respond to this order. In Opinions 2 and 3, he opined that, based on his review of the invoices and the underlying environmental documentation, he calculated that the City of Avalon paid $723,449.75 and the Island Company paid $799,472.77 in response costs to comply with the 2012 DTSC Order.[1] (Hokk. Dec., ¶ 9).

---

[1] Hokkanen later revised these numbers slightly to show that the City had incurred $761,487.75 and the Island Company had incurred $874,303.77 in response costs. (Hokk. Dec., ¶ 9).

Finally, in Opinion 4, Hokkanen provided a summary, based on his review of environmental documentation, as to what remedial and investigative work had been done at the School Site, and stated that once the RAP implementation was completed, the DTSC was expected to approve completion of the actions and allow the continued use of the school subject to the Soil Management Plan ("SMP") and Land Use Covenant ("LUC"). In November 2023, after Hokkanen wrote the report, the DTSC, as expected, issued a Removal Action Certification, in which it determined that all appropriate removal/remedial actions have been completed, that the SMP and LUC will remain in place, and the School Site will be delisted as an "active" site. (Hokk. Dec., ¶ 11 and Exhibit B (Removal Action Certification)).

Hokkanen's opinions 2 through 4 are relevant to Defendants' cross-complaint (to be tried by a bench trial following the jury trial). As such, in the meet-and-confer prior to the filing of Motions In Limine, Defendants informed Plaintiff that they did not intend to offer these opinions to the jury. (Declaration of Joshua Levine ("Levine Dec."), ¶ 2).

### III. LEGAL STANDARD

Federal Rule of Evidence 702 provides that expert evidence is admissible if: 1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training or education; 2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; 3) the testimony is based on sufficient facts or data; 4) the testimony is the product of reliable principles and methods; and 5) the expert has reliably applied the relevant principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311 (9th Cir.1995) ("*Daubert II*"), a District Court's inquiry into admissibility is a flexible one requiring the trial court to act as a gatekeeper, not a fact finder. *Primiano v. Cook*, 598 F.3d

1  558, 565 (9th Cir. 2010), as amended (Apr. 27, 2010). "Expert opinion testimony is
2  relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.
3  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge
4  and experience of the relevant discipline." *Primiano,* 598 F.3d at 565. "Shaky but
5  admissible evidence is to be attacked by cross examination, contrary evidence, and
6  attention to the burden of proof, not exclusion." *Id.* at 564. The trial court must only
7  exclude "unreliable nonsense opinions" but may not exclude opinions "merely
8  because they are impeachable." *Alaska Rent-A-Car v. Avis Budget Group, Inc.,* 738
9  F.3d 960, 969 (9th Cir. 2013). Thus, the District Court is not to decide whether the
10 expert is right or wrong, but merely whether the testimony has substance such that it
11 would be helpful to a jury. *Id.* at 969-70.
12     The District Court has discretion to decide how to test an expert's reliability as
13 well as whether the testimony is reliable based upon the circumstances of the
14 particular case. *Primiano v. Cook,* 598 F.3d at 564. However, "[c]hallenges that go to
15 the weight of evidence are within the province of a fact-finder, not a trial court judge."
16 *City of Pomona v. SQM North America Corporation* 750 F.3d 1036, 1044 (9th Cir.
17 2014). "A district court should not make credibility determinations that are reserved
18 for the jury." *Id.*
19     An expert's methodology satisfies the *Daubert* reliability standard so long as it
20 can be challenged in some objective sense and is not simply a subjective, conclusory
21 approach that cannot be assessed for reliability. *Id.* at 1046. Furthermore, a minor
22 flaw in an expert's reasoning or slight modification of an otherwise reliable method
23 does not render expert testimony inadmissible. *Amorgianos v. National R.R.*
24 *Passenger Corp.*, 303 F.3d 265, 267 (2d Cir. 2002). Moreover, "[t]rained experts
25 commonly extrapolate from existing data." *General Electric Company v. Joiner,* 522
26 U.S. 136, 146 (2007). "It is only where expert opinion is 'connected to existing data
27 only by the *ipse dixit* of the experts' that there may be 'too great an analytical gap
28

between the data and the opinion preferred' to support inclusion of the testimony.'" *City of Pomona,* 750 F.3d at 1049. The overarching rule is that "[a] factual dispute is best settled by a battle of experts before the fact-finder, not by 'judicial fiat.'" *Id.*

## IV. HOKKANEN'S OPINION 1 IS PROPER

Hokkanen's opinion 1 is straightforward. He reviewed a substantial amount of environmental documentation pertaining to numerous other school sites operated in the Long Beach area by Plaintiff. He compared the contamination found at these other sites to what was found at the School Site. He concluded that the same contaminants identified in soil at the School Site (lead, arsenic, dioxins/furans, arsenic, and PAHs) have been identified in soil at many other Plaintiff schools, which suggested a likely association between the contaminants and school activities. His report backed up his assessment by identifying and discussing the specific environmental information as to multiple school sites operated by Plaintiff that supported this opinion. (Hokk. Dec., ¶ 5, 8).

This type of analysis--where one compares the environmental data from a subject site to environmental data at other sites where similar operations were performed--is a common type of environmental analysis. One of the typical early steps in any environmental assessment is to identify analytes that are associated with the type of operations known to have occurred at the site. As example, in a site where dry cleaning operations were known to have occurred, one would look for PCE, which are commonly associated with historic dry cleaning operations. With respect to older schools, the DTSC has issued a guidance document (which Hokkanen relied upon) of typical contaminants to look for, which includes contamination from lead and pesticides. (Hokk. Dec., ¶ 6).

Plaintiff complains that Hokkanen did not identify his methodology in his analysis. This is not true. He identified facilities that had similar histories to the subject site (schools) and compared the environmental data to what was found at the

1  School Site.  (Hokk. Dec., ¶ 5).  In fact, his methodology was similar to that
2  employed by Plaintiff's environmental expert Peter Mesard in his report.  In Mesard's
3  report, he compared the contaminants found at three California burn dump sites and
4  compared these results to what was found at the School Site and concluded that there
5  was a link.  (Dkt. 236-26 (Mesard Report) at 26, 46).  The main difference between
6  the two expert analyses is that Hokannen focused only on directly relevant sites
7  (schools operated by Plaintiff) and was able identify a significant number of
8  analogous school sites, while Mr. Mesard's analysis was limited to three sites with
9  significantly different geographic and operational histories.  (Hokk. Dec., ¶ 7).
10     Hokkanen further elucidated the nature of his analysis at deposition, when he
11 explained that he was simply making a correlation between contaminants found at
12 other schools and contaminants found at the School Site, which suggested that school
13 activities were responsible for the contamination.  (Dkt. 254-6 at 215:10-15 and
14 216:7-13).  Plaintiff suggests that this testimony is inconsistent with the opinion set
15 forth in Hokkanen's report.  It is not—Opinion 1 states that other Plaintiff school sites
16 have the same contamination as the School Site and that therefore this contamination
17 is likely associated with school activities.  (Dkt.  254-3 at p. 18).
18     Plaintiff attacks Hokkanen for not including various information in his report,
19 such as the alleged finding in a 2002 report by one of the Plaintiff's other consultants
20 regarding the existence of a particular type of pesticide.  Plaintiff is free to raise this
21 issue, as well as the other attacks listed by Plaintiff, as impeachment at trial.
22 However, such challenges go to the weight to be given to the opinion, not its
23 admissibility.
24     In sum, Hokkanen's analysis is the type of analysis that is commonly
25 performed by environmental consultants and is similar to the analysis performed in
26 this case by Plaintiff's expert Mesard.  While Plaintiff is free to question this analysis
27 at trial, it is up to the fact-finder to evaluate what weight to give to this opinion.
28

## V. HOKKANEN'S OPINIONS 2 AND 3 ARE PROPER

Defendants have already indicated that they will not be having Hokkanen testify to the jury as to opinions 2 through 4. (Levine Dec., ¶ 2). Accordingly, the necessity of a motion in limine on these opinions is questionable, as motions in limine are typically used to prevent improper material from being presented to a jury.

Moreover, Plaintiff's challenge to Hokkanen's opinions fails. Hokkanen testified that certain costs on invoices were incurred by Defendants in response in a 2012 DTSC Order. Plaintiff claims that Hokkanen used no methodology in assessing the invoices. In fact, Hokkanen used a straightforward methodology in his analysis. He reviewed invoices and the underlying environmental materials to which they pertained. He then, using his considerable experience in managing environmental projects, categorized the amounts of each invoice that reflected amounts incurred by each Defendant in response to the 2012 Order. In his report, he "showed-his-work" by including his work-sheet, which identified each invoice that he reviewed and stated whether or not he assessed amounts paid on that particular invoice as reflective of payments by Defendants for response costs. (Hokk. Dec., ¶ 10 and Dkt. 254-4 at Exhibit C).

Plaintiff has no evidence that Hokkanen did not use a methodology in his assessment. Rather, Plaintiff challenges the credibility of the assessment by suggesting that some non-response costs may have been included in his calculations. Notably, Plaintiff does not show any actually mischaracterized costs; rather, it only raises the potential that a cost could have been mischaracterized. Such an argument goes to the weight to be given the opinion, not its admissibility.

In short, Hokkanen provided a straightforward assessment of costs that was in line with his forty years of experience working on all aspects of environmental projects, including costs. While Plaintiff is free to challenge that particular costs should not have been included in this analysis, there is no basis for exclusion.

## VI. PLAINTIFF'S CHALLENGE TO OPINION 4 IS IMPROPER AND MOOT

Opinion 4 provides an overview of environmental actions that had been performed at the site. Plaintiff challenges only one portion of this opinion, namely the sentence in which Hokkanen states that "once the implementation of remediation described in the RAP is complete" it was expected that DTSC will approve the cleanup work completed under the 2012 Order. (Dkt. 254-11 at 11:1-3).

Preliminarily, even if Plaintiff is correct that this one sentence is "unreliable", it in no way impacts the rest of Opinion 4 which provides an overview of the remedial history of the School Site. Plaintiff does not challenge the rest of Opinion 4. Despite this, Plaintiff's motion seeks to exclude the entire Opinion 4 (and not just the one sentence), and, in Plaintiff's meet-and-confer prior to the motion, Plaintiff failed to even mention the one objection to Opinion 4 that it is now raising. In fact, in the meet-and-confer, Plaintiff's counsel never mentioned that it sought to exclude Hokkanen's opinion as to what the DTSC was expected to do. (Levine Dec., ¶ 3 and Exhibit C). Plaintiff's motion should be denied based on its failure to properly meet and confer.

Had Plaintiff's counsel raised the basis for its anticipated motion in the meet-and-confer, Defendants would have explained that the issue of what the DTSC "may" do is now moot. Two months ago, the DTSC, in accordance with its own protocols, acted exactly as Hokkanen anticipated. On November 1, 2023, the DTSC issued a Removal Action Certification where it certified that "all appropriate removal/remedial actions have been completed" and that the site would be removed from the "active" site list. (Hokk. Dec., ¶ 12 and Exhibit B (Removal Action Certification)). The issue of whether Hokkanen would have been allowed to testify that it is likely that the DTSC will approve the clean-up work is moot in light of the fact that the DTSC has approved the clean-up work.

# VII. CONCLUSION

For the above reasons, Plaintiffs' Motion In Limine Regarding Gary Hokkanen should be denied in its entirety.

DATED: January 10, 2024                    COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

By: *[signature]*
GREGORY D. TRIMARCHE
JONATHAN R. MEDINA
Attorneys for Defendant,
Counterclaimant/Cross-Claimant
SANTA CATALINA ISLAND COMPANY

DATED: January 10, 2024                    BOOTH, LLP

By: *Joshua Levine*
JOSHUA N. LEVINE
PAUL D. RASMUSSEN
Attorneys for Defendant,
Counterclaimant/Cross-Claimant
CITY OF AVALON