Gregory D. Trimarche (SBN 143686) gtrimarche@cookseylaw.com
Jonathan R. Medina (SBN 272308) jmedina@cookseylaw.com
**COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**
A Professional Corporation
535 Anton Boulevard, Tenth Floor
Costa Mesa, California 92626-1977
Telephone: (714) 431-1100
Facsimile: (714) 431-1119

Attorneys for Defendant, Counterclaimant/Cross-Claimant
SANTA CATALINA ISLAND COMPANY

Joshua N. Levine, Esq. (SBN 171840) jlevine@boothllp.com
Paul D. Rasmussen, Esq. (SBN 201680) prasmussen@boothllp.com
**BOOTH, LLP**
11835 W. Olympic Boulevard, Suite 600E
Los Angeles, CA 90064
Phone: (310) 641-1800
Facsimile: (310) 641-1818

Attorneys for Defendant, Counterclaimant/Cross-Claimant
CITY OF AVALON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CATALINA ISLAND COMPANY and CITY OF AVALON,<br><br>Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS | Case No.: 2:19-cv-01139-MEMF-AS<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DECLARATION OF GARY HOKKANEN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**<br><br>Hearing Date: February 7, 2024<br>Time: 2:00 p.m.<br><br>Complaint Filed: February 14, 2019<br>Trial Date: March 25, 2024 |

I, Gary Hokkanen, declare as follows:

1. I am an engineer and hydrogeologist with over 40 years of professional experience in the development, evaluation and implementation of investigations and response actions at environmental contamination projects and environmental-related litigation support.  It is my understanding that I have been designated as an expert in the above entitled matter by defendants City of Avalon (the "City") and Santa Catalina Island Company ("ICO") (together, "Defendants").   I submit this declaration in opposition to a Motion In Limine submitted by Plaintiff Long Beach Unified School District ("Plaintiff").   The following facts are within my personal knowledge and, if called to testify to the matters stated herein, I could and would competently do so.

2. I am an engineer and hydrogeologist with over 40 years of professional experience in the development, evaluation and implementation of investigations and response actions at environmental contamination projects and environmental-related litigation support.  Attached hereto as Exhibit "A" is a copy of my curriculum vitae.

3. I obtained a Bachelor of Science degree in Civil Engineering, with an emphasis on environmental engineering, from the University of Minnesota in 1980. Subsequently, I performed graduate work in the field of contaminant hydrogeology at the University of Waterloo, from which I obtained a Master of Science Degree in 1984.

4. I have worked on a wide variety of projects relating to the investigation and remediation of contaminated property, with a focus on soil and groundwater contamination.  I began my professional career in the public sector, working as a staff engineer for the Environmental Protection Agency (Region 9). Subsequently, I have worked for numerous environmental consulting firms.  I

1
2
3
4
5
6
7
8
9
10
11
12
13
have been the Project Manager or Principal-in-Charge of the investigation and remediation of contaminated sites throughout the United States and Canada. My investigation and remediation work at over 100 sites has involved characterization of groundwater flow systems; characterization of contaminated soil and groundwater; analysis of contaminant fate and transport; development of feasibility studies; selection and design of soil, groundwater, and sediment remedial actions; agency negotiations; and technical observation of work performed by potentially responsible parties.  Additionally, I have significant experience with evaluating costs for environmental projects, including decades of experience forecasting, budgeting, and reviewing costs of such projects. Approximately 15 years ago, I also began acting as an expert in environmental litigation and have testified at trial or by deposition in over 20 environmental cases.

14
15
16
17
18
19
20
21
22
23
5. After being retained in this matter, I reviewed numerous environmental reports relating to the Plaintiff's school site located in Avalon, California (the "School Site").  I then reviewed a voluminous amount of material relating to environmental conditions at other Plaintiff sites, including environmental investigations of other Plaintiff sites and guidance documents issued by the Department of Toxic Substances Control ("DTSC") regarding school sites.  I compared the environmental findings of these other Plaintiff sites to the School Site and noted the similarities between contamination found at the School Site and that found in multiple schools operated by Plaintiff, which suggested a likely association between the operation of a school and these contaminants.

24
25
26
27
28
6. This type of analysis--where one compares the environmental data from a subject site to environmental data at other sites where similar operations were performed--is a common type of environmental analysis.  In fact, one of the typical early steps in any environmental assessment is to identify analytes that

3

1    are associated with the type of operations known to have occurred at the site.
2    As example, in a site where dry cleaning operations were known to have
3    occurred, one would look for PCE, which are commonly associated with
4    historic dry cleaning operations.  With respect to older schools, the Department
5    of Toxic Substances Control ("DTSC") has issued a guidance document (which
6    I examined in this matter) of typical contaminants to look for, which includes
7    contamination from lead and pesticides.

8.  7.  I have performed this type of review numerous times over the course of my
9       professional career and have seen such an analysis performed by numerous
10      other consultants in the environmental field.  I note further that in a report
11      submitted in this action by Plaintiff's environmental expert Peter Mesard, Mr.
12      Mesard performed a similar analysis when he compared the contamination
13      found at the School Site with contamination found at three waste dumps located
14      at various locations throughout California.  My methodology was similar to that
15      used by Mr. Mesard.   Mr. Mesard identified facilities where particular
16      operations had occurred and compared the environmental data to what was
17      found at the School Site.   The main difference between our respective analyses
18      is that I focused only on directly relevant sites (schools operated by Plaintiff)
19      and was able identify a significant number of analogous school sites, while Mr.
20      Mesard's analysis was based on three sites with significantly different
21      geographic and operational histories.

22. 8.  Ultimately, I issued a report, which included Opinion No. 1, where I detailed
23      the comparison sites at which I looked, and the basis for drawing a link between
24      those sites and the School Site.  Specifically, I concluded that the same
25      contaminants identified in soil at the School Site (lead, arsenic, dioxins/furans,
26      arsenic, and PAHs) have been identified in soil at many other Plaintiff schools,

which suggested a likely association between the contaminants and school activities.

9. I further reviewed invoicing sent to Defendants during the time period that Defendants and Plaintiff were jointly responding to a 2012 DTSC Order and calculated the amount of payments made by Defendants in order to respond to this order. In Opinions 2 and 3 of my report, I opined that, based on my review of the invoices and the underlying environmental documentation, I calculated that the City paid $723,449.75 and the Island Company paid $799,472.77 in response costs to comply with the 2012 DTSC Order. I later revised these numbers slightly to show that the City had incurred $761,487.75 and the Island Company had incurred $874,303.77 in response costs.

10. I used a straightforward methodology in analyzing the invoices. First, I reviewed invoices and the underlying environmental materials to which they pertained. Then, I, using my experience in managing environmental projects, categorized the amounts of each invoice that reflected amounts incurred by each Defendant in response to the 2012 DTSC Order. In my report, I "showed-my-work" by including, as Table C to my report, my work-sheet, which identified each invoice that I reviewed and stated whether or not I assessed amounts paid on that particular invoice as reflective of payments by Defendants for response costs.

11. In Opinion # 4 of my report, I provided a summary, based on the environmental documents relating to work performed at the School Site, as to what remedial and investigative work had been done at the Site, including a statement that once the Remedial Action Plan ("RAP") implementation was completed, the DTSC was expected to approve completion of the actions and allow the continued use of the school subject to the Soil Management Plan ("SMP") and Land Use Covenant ("LUC"). This statement was based on the

DTSC's published protocols as to how it exercises oversight, as well as my own knowledge through my work experience of these procedures. Based on this, I was aware that the DTSC's procedures include that if it approves a RAP, and then the work called for under the completion of the RAP is performed to its satisfaction, DTSC will then formally approve the work that has been completed.

12. In November 2023, after I wrote my report, the DTSC issued a Removal Action Certification, in which it determined that all appropriate removal/remedial actions have been completed, that the SMP and LUC will remain in place, and the School Site will be delisted as an "active" site. A copy of this document is attached hereto as Exhibit "B". The DTSC issuance of this certification is consistent with my report's statement that the DTSC was expected to approve completion of the work, which, in turn, was consistent with well-established DTSC procedures.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this 23rd day of January 2024, at Los Angeles, California.

_____

Gary Hokkanen