Joshua Van Eaton (*Pro Hac Vice*)
jvaneaton@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone:  (202) 789-6000
Facsimile:  (202) 789-6190

Attorney for Plaintiff/Counterdefendant
Long Beach Unified School District

*[Additional Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>vs.<br><br>SANTA CATALINA ISLAND COMPANY and CITY OF AVALON,<br><br>Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No.  2:19-cv-01139-MEMF (ASx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>Complaint Filed:  February 14, 2019<br>Trial Date:  March 25, 2024 |

## I. INTRODUCTION

Defendants' supplemental brief makes a litany of inflammatory misrepresentations regarding the District's recent production of documentation for 82 new remediation costs and advanced production of its FRE 1006 cost summary exhibit in yet another attempt to delay this trial. Defendants' supplemental briefing has no impact on the issues already briefed in their initial motions *in limine* seeking to exclude post-complaint damages and Neal Brody's testimony on past costs. Defendants previously claimed prejudice because the District's 2019 initial Rule 26 disclosure did not include damages based on costs incurred between 2019 and 2023, despite the District' and California Department of Toxic Substances Control's numerous supplemental productions of cost documentation during those years. The District in turn produced its FRE 1006 cost summary that well surpasses the content requirements of Rule 26. The District also provided supplemental documentation for its ongoing costs. Defendants now complain that the cost summary and related produced cost documentation are prejudicial. Defendants' only argument is that invoices, proof of payment, and an updated damage amount (though decreased) are somehow prejudicial even though the information was expected. The FRE 1006 summary makes clear that the District's damages are *75 percent* lower than projected in 2019 (when its CERCLA claims were still live). But Defendants did not take fact discovery regarding the invoices and proof of payment they have had for years. Defendants' motion should be denied. So too should their reliance on the same recycled arguments for excluding Mr. Brody's fact testimony regarding the District's remediation-related costs that the Court correctly rejected in its tentative ruling, which are no more convincing now.

## II. ARGUMENT

### A. The District's Cost Documents Are Not the Hopeless Morass Defendants Describe.

Defendants' hyperbolic description of the District's recent production of 384 cost documents is easily rebutted. During the first week of February, the District produced invoices for 81 new remediation costs for Remedial Action Plan ("RAP") phase II implementation and the concurrent modernization and ball field projects, as previewed in its Opposition to Defendants' Post Complaint Damages Motion *in Limine*, and one September 8, 2022 Waste Management invoice for $1,656 that was inadvertently omitted from prior productions. *See* February 19, 2024 Declaration of Joshua Van Eaton

2

("Van Eaton Decl.") at ¶¶ 2, 4, Ex. 1; ECF No. 266 at p. 9 fn. 3.  The 82 new invoices produced are less than a quarter of the total February production page volume.  *See* Van Eaton Decl. at ¶ 3.  More than seventy-five percent of the production volume consisted solely of proof of payment documentation for the new invoices and many previously produced invoices—documentation Defendants acknowledge to be a "minor point" and have not themselves provided to the District for the majority of costs they seek to recover during the bench trial.  Van Eaton Decl. at ¶ 3; *see also See* Van Eaton Decl. at ¶ 11, Ex. 10.  To mitigate any purported prejudice, the District provided advanced notice of this production in prior briefing and in a meet-and-confer with Defendants on February 1, 2024.  Van Eaton Decl. at ¶ 4, Ex. 1.  Furthermore, the District provided Defendants with a comprehensive FRE 1006 Summary of District Remediation Costs immediately upon Defendants' request and days before the deadline for exchanging trial exhibits, and advised Defendants that the summary served as an amended Rule 26(a) damages disclosure.[1]  *See* Van Eaton Decl. at ¶¶ 5-6, Exs. 2, 3.  The District provided to Defendants an updated FRE 1006 Summary on February 8, 2024.  *See* Van Eaton Decl. at ¶ 6, Ex. 4.  The FRE 1006 summary clearly identified the new cost invoices by bates numbers, and the bates numbers of all previously provided invoices and all relevant proof of payment cost documentation, and directed Defendants to all relevant information.  *See* Van Eaton Decl. at ¶ 6, Ex. 4.

Defendants' misdirected focus on the page count of the District's February 2024 supplemental productions (approximately 7,300 pages) is misleading, because less than a quarter of the page count consisted of newly produced cost invoicing.[2]  Instead, the bulk of the supplemental productions were simply proof of payment documentation supporting produced cost invoices—it was not new information.  *See* Van Eaton Decl. at ¶ 4, Ex. 1, ¶ 6, Ex. 4.[3]  Prior to the productions, the District explained to Defendants that it already produced proof of payment for many previously disclosed invoices, and in the interest of cost record completeness it would supplement its prior productions with

---

[1] The District uses the term "remediation" in the motion *in limine* briefs to broadly refer to costs associated with the cleanup and management of Defendants' contamination. As used in these briefs, the District does not intend to apply the CERCLA statutory or regulatory meanings of the word "remediation" or "remedial."

[2] This is approximately the same volume as the supplemental production requested by Defendants less than a month prior—production 41 (consisting of 1,300 pages).  *See* Van Eaton Decl. at ¶ 7, Ex. 5.  Defendants had no problem requesting and receiving those 1,300 supplemental pages shortly before the parties' MIL briefing deadlines in this matter.

[3] In the bigger picture, the District's February cost documentation productions are about 1.5% of its total production volume in this case, and mostly includes information related to already disclosed costs.  *See* Van Eaton Decl. at ¶ 3.

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

1 proof of payment for the remainder of the previously disclosed invoices.[4]  *See* Van Eaton Decl. at ¶ 4,
2 Ex. 1.  The District also informed Defendants that it would provide additional corroborative proof of
3 payment in the form of warrants for a number of previously produced invoices for which proof of
4 payment was disclosed in alternative forms (e.g., vendor payment history reports or payment histories
5 on invoices).  *See* Van Eaton Decl. at ¶ 4, Ex. 1.  Lastly, the District included proof of payment for the
6 subset of new invoices that had been paid by the District at the time of the production.

**B.     The District's FRE 1006 Cost Summary Was Timely and Should Not be Excluded.**

On February 7, 2024, counsel for the City requested to see the District's ER 1006 summary exhibit.  *See* Van Eaton Decl. at ¶ 5, Ex. 2.  The District provided the requested exhibit less than an hour later even though the deadline for providing exhibits pursuant to the parties' schedule was not until February 9, 2023.  *See* Van Eaton Decl. at ¶ 6, Ex. 3.  The District's disclosure was also timely under relevant case law in the Ninth Circuit.  *See e.g., United States v. Dashner*, No. 12–CR–00646–SI–1, 2015 WL 3660331, at *6-7 (N.D. Cal. June 2, 2015) (allowing plaintiff to rely on Rule 1006 summaries not yet provided to defendant at time of final pre-trial conference where underlying documents had been produced); *see also Lovo v. Express Courier Int'l*, NO. 4:16-CV-853-Y, 2018 WL 6573132, at 1 (N.D. Tex. Oct. 24, 2018).

The District advised Defendants that its cost summary served as its amended Rule 26(a) damages disclosure.  *See* Van Eaton Decl. at ¶ 6, Ex. 3.  Contrary to Defendants' claim that the District "provided—for the first time—the amount of its damage claim and the basis for it" on February 7, 2024, the District's FRE 1006 summary exhibit updated its August 2019 initial disclosures.  ECF No. 274 at 3.  As Defendants acknowledged in their initial post-complaint damages brief, and again in their supplemental brief, the District initially disclosed a damages estimate of $12 million (with a concurrent production including cost documentation).  ECF No. 252-1 at 8; ECF No. 274 at 5; Van Eaton Decl. at ¶ 8, Ex. 6.  The District's initial disclosure described the $12 million estimate as including CERCLA "response costs" and "damages alleged in its Complaint."  *See* Van Eaton Decl. at ¶ 8, Ex. 6.  On August 17, 2021, the Court dismissed the District's claims, including its CERCLA claims, except for ongoing

---

[4] Defendants have indicated that proof of payment is a "minor point" and unnecessary to disclose completely, but the District did so nevertheless. *See* Van Eaton Decl. at ¶ 11, Ex. 10.

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

1  private nuisance. ECF No. 114. Defendants have known since that time that "Plaintiff will not be able to recover costs incurred or damages sustained before February 14, 2016." *Id.* at 18.[5]

The District's amended damages disclosure formally updated its estimate to exclude the pre-February 14, 2016 costs. It also identified bates numbers and information (date, description, invoice number, amounts, costs paid, proof of payment) for each and every relevant invoice, bates numbers identifying mere duplicate invoices, and bates numbers for supporting proof of payments. *See* Van Eaton Decl. at ¶¶ 6, 9, Ex. 4. These details far exceed Rule 26's basic requirement. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (a party must provide "a computation of each category of damages claimed by the disclosing party"). Defendants now ask the Court to exclude from trial the District's amended disclosure costs. *See* ECF 274 at 12. Remarkably, Defendants are asking the Court to exclude an amendment that significantly *decreased* the District's damage claim.[6] *Id.*

Moreover, the District notes that it has repeatedly asked whether Defendants will update their own Rule 26(a) damages disclosures. *See* Van Eaton Decl. at ¶ 6, Ex. 3; Van Eaton Decl. at ¶ 10, Ex. 7; Van Eaton Decl. at ¶ 10, Exs. 8,9. Defendants' 2019 disclosures clearly contemplated future supplementation, but Defendants have yet to provide a clear response as to if they ever intend to supplement the disclosures. *Id.* Defendants have not made the additional costs it may seek at trial "known to the other parties during the discovery process or in writing" pursuant to Rule 26(e)(1)(A). And unlike the District, the costs Defendants may present at trial could increase, not decrease, from their original 2019 disclosure. Even so, the District is prepared to try this case, and defend against Defendants' counter claims, in five weeks. Further delay of the trial is not warranted by Defendants lack of cost supplementation and disclosure, nor is it warranted by the District's production of its FRE 1006 summary that serves to significantly narrow the scope of District costs to be put at issue at trial.

**C.    Defendants Are Not Prejudiced by the District's February 2024 Productions.**

1. <u>Supplemental Cost Productions Were Inevitable and No Surprise to Defendants.</u>

---

[5] As the invoices are dated, it is obvious from the face of the invoices whether they pre- or post-date February 14, 2016.
[6] To the extent the District's initial Rule 26(a) disclosures were over-inclusive by continuing to include pre-February 14, 2016 costs after the August 2021 motion for summary judgment ruling, the District cured this issue by providing its updated disclosure to formalize the temporal cost recovery limits of which the parties were already aware.

5

As the Court correctly found in its tentative ruling, California law authorizes the recovery of post-complaint/pre-judgment damages in continuing private nuisance cases. Accordingly, supplemental productions after the close of fact discovery are inevitable because the District continues to incur post-complaint costs to abate the continuing nuisance. The District has repeatedly attempted to coordinate with Defendants a way to manage these continuing costs at trial, to no avail. In early 2023 and also earlier this year, the District proposed that the parties agree to use the cut-off date of January 31, 2023 for the costs that the District would put at issue at trial. *See* Van Eaton Decl. at ¶ 11, Ex. 10; ECF No. 264 at 3 fn. 1. Pursuant to the District's proposal, costs incurred after that date would be recoverable in a post-trial cost proceeding governed by the trial findings or, alternatively, governed by the terms of an abatement order. *See* Van Eaton Decl. at ¶ 11, Ex. 10; ECF No. 264 at 3 fn. 1. Defendants rejected each of the District's overtures. Following Defendants' more recent rejection this year, the District supplemented its cost documentation. *See* Van Eaton Decl. at ¶ 11.

Defendants have long been aware of the District's position that its post-complaint damages are recoverable in this action. They have also been aware of and observed the ongoing remediation work taking place at the site and the District's corresponding incurrence of remedial costs to pay for this work. For example, Defendants' expert Gary Hokkanen prepared a summary of invoices as Exhibit C to his November 23, 2021 report. *See* Van Eaton Decl. at ¶ 12, Ex. 11. Mr. Hokkanen's summary compiled vendor invoices that included remediation costs, including from 2H Construction, Arcadis, Avalon Freight Services, Leighton, EEC, GSI, among many others, showing that Defendants have been well aware of vendors' identities and what their invoices look like for years. *See* Van Eaton Decl. at ¶ 12, Ex. 11. Defendants have also known that future remedial costs would be incurred consistent with the 2019 RAP and the District's ongoing compliance with the DTSC mandated Soil Management Plan.[7] Indeed the actual remediation costs incurred to date have closely tracked the remediation costs projected in the 2019 RAP. *See* Van Eaton Decl. at ¶ 14, Ex. 13 at 12-13, 25-27, 29-32. 42-43, Figure 7, Figure 8.

---

[7] Neal Brody's December 2021 rebuttal report also described the nature of the projected costs for future work. *See* Van Eaton Decl. at ¶ 13, Ex. 12 at 13-14 ("a Soil Management Plan was submitted to the DTSC in 2020 for the protection of facilities, maintenance and operations employees . . . during future soil disturbance activities as well during any future modernization, excavation, or construction activities[.] . . . Costs in compliance with the SMP are likely to cost as much as $100,000 in annual costs" and "near-term upgrades planned . . . will include HVAC system installation . . . [and] athletic turf field replacement.").

6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

Defendants' unwillingness to coordinate an agreeable approach to managing those ongoing costs at trial led to the District's entirely predictable production of updated cost documentation.

The District also specifically previewed to Defendants its intent to produce the early February supplemental production in its opposition to Defendants' post-complaint damages motion *in limine*, stating that it "intends to produce another set of cost documentation which will bring costs documentation productions current through January 2024." ECF No. 266 at 9. The District again previewed the February supplemental production in detail in a pre-production meet and confer with Defendants. Van Eaton Decl. at ¶ 4, Ex. 1. The District accordingly served supplemental productions on Thursday, February 1, 2024 and the following week.

Defendants' claims of surprise as to the content of the February 2024 production fall flat. Defendants argue that certain damages categories are new, but for years the District has been producing documentation relating to these costs (e.g., tribal monitoring, transport, and soil management plan compliance). *See* Van Eaton Decl. at ¶ 6, Ex. 4. Defendants never asked the District for clarification or sought fact discovery about them. Moreover, Defendants complain that they did not have an opportunity to conduct discovery regarding HVAC and athletic field related remediation costs is false, as they deposed Mr. Brody regarding such costs. *See, e.g.*, Van Eaton Decl. at ¶ 15, Ex. 14.

2. Defendants Admit that Most of the 2024 Cost Production Is Insignificant.

Defendants have conceded that they view much of the cost documentation in the District's supplemental production (i.e. proof of payment) as unimportant. When the District asked if Defendants intended to produce proof of payment for all costs Defendants seek to recover at the bench trial, the City responded that "proof of payment is a minor point." *See* Van Eaton Decl. at ¶ 11, Ex. 10. The Island Company clarified it would not bother at all with producing complete proof of payment. *See Id.* As described above, less than a quarter of the District's document volume produced in February 2024 are invoices representing new costs. More than three quarters of the page count is "minor" documents that will not prejudice Defendants.

3. The District's Amended Disclosure Reduced Its Total Damage Claim.

7

Defendants may be the first parties to pound their fists about a substantially *decreased* updated damage disclosure from a plaintiff. Defendants make an ill-fated attempt to portray the District's Summary as an "exponential[] increase" in Plaintiff's damages amount. ECF No. 274 at 10. But Defendants' complaint of prejudice rings hollow when the complaint is that the District seeks millions *less* than Defendants claim to have understood to be at issue. *See* ECF 274 at 3. That cannot be construed as prejudicial under any interpretation.

### 4. The District Has Repeatedly Attempted to Accommodate Reasonable Discovery.

The District disputes that Defendants are prejudiced by an unsurprising supplemental production of unsurprising documents related to newly disclosed costs for unsurprising work. Assuming Defendants have been prejudiced, the appropriate remedy is limited reasonable discovery, which the District has repeatedly offered to provide. On February 1, 2024, the District asked Defendants if there was any reasonable discovery they believed would help to cure alleged prejudice, but Defendants responded that "there is nothing the District could do now to ameliorate the harm." *See* Van Eaton Decl. at ¶¶ 6, 17, Ex. 3. On February 11, the District again asked Defendants to consider "whether any additional reasonable discovery would be appropriate to further mitigate the purported prejudice alleged to be the result of Plaintiff's recent cost productions in this matter." *See* Van Eaton Decl. at ¶ 10, Ex. 7. The following day, Defendants claimed they would now need extensive discovery (and a delayed trial date), despite having taken no such discovery over the course of the years since the District's initial disclosure in 2019 and numerous supplemental cost productions prior to the January 2022 discovery cutoff. *See* Van Eaton Decl. at ¶ 18, Ex. 15. Nor did they seek to reopen discovery after the March 2023 production of additional invoices and proof of payment. *See* Van Eaton Decl. at ¶ 18. In other words, Defendants essentially refused to make any effort to cure the purported prejudice they created by never taking discovery regarding any of the costs they have known about for years, then suddenly demanding unreasonably burdensome discovery.

Defendants claim generally that the invoices the District has produced in this matter are vague and ambiguous on their face regarding which portions pertained to remedial costs, but they did not take any steps at all to clarify any perceived ambiguity. Defendants have known the identity of nearly all of

8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

the District's vendors since the District's Initial Disclosures in 2019 and subsequent pre-discovery cutoff cost productions but did not subpoena a single one of them. *See supra* II.C. Defendants did not put one of the District's invoices in front of the District's 30(b)(6) witness designated for cost issues to ask questions about how remediation costs were distinguished. Defendants' current claims for additional discovery are a ruse to delay the trial.

### D. The District Has Complied with Rule 26(a), but any Alleged Deficient Disclosures or Untimely Productions Were Otherwise Harmless.

The District's February 2024 supplemental productions were substantially justified under the circumstances of this case because the District's post-complaint, pre-judgment damages are ongoing and necessarily had to be disclosed after the close of discovery. The District's provision of the FRE 1006 summary exhibit also cured any possible deficiency relating to lack of a formal damage claim update following the Court's August 2021 summary judgment opinion.

Even if the February productions and FRE 1006 summary exhibit disclosures were deficient or untimely, any purported deficiencies were harmless under Rule 37(c)(1) and thus the disclosures should not be excluded. "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). Here, Defendants are not prejudiced by the District's supplemental productions in early February because, as discussed above, Defendants were well aware of and observed the ongoing site work and the specific nature of the costs the District was incurring. The District also demonstrated good faith by attempting in early 2023 to reach a stipulation with Defendants governing handling of post-complaint, pre-judgment costs.

### E. Establishing of a Cut-Off Date for Damages at Issue at Trial Cures any Remaining Prejudice.

The District has long recognized the practical question of what costs will be at issue at trial, given that the District continues to incur costs and will do so through the date of judgment in this action. As described herein, the District has made efforts to resolve this question through a stipulation

9

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

establishing a cut-off date for costs at issue at trial. In their supplemental brief, Defendants no longer contest the recoverability of post-complaint damages in this action, and so they should now be amenable to this option.[8] Thus, to the extent the Court finds that Defendants are prejudiced by the District's February 2024 disclosures the District requests that the Court establish January 31, 2023 as the cut-off date for past costs the District will put at issue at trial, and treat costs incurred after that date as either (1) costs to be recovered in a post-trial proceeding governed by the trial findings, or (2) costs to be governed by the terms of an abatement order.

### F. Defendants Wrongly Attempt to Bootstrap the District's March 2023 Production to Their Complaints about the District's February 2024 Productions.

Regardless of how the Court rules on the District's February 2024 productions, the Court should not disturb its tentative holdings on the District's March 2023 productions. As outlined in the District's first opposition brief, Defendants have had those documents for over 10 months and made no complaints until the eve-of-trial. The Court should reject Defendants' ploy to convert its supplemental briefing into a rebrief of its initial motion *in limine* regarding Defendants' March 2023 production (or any prior disclosure). Similar to Defendants' failure to diligently pursue cost-related discovery after the District's 2019 initial disclosures, Defendants simply sat on their hands after the District's March 2023 supplemental cost disclosure.

### G. Nothing In the District's February 2024 Productions Converts Neal Brody's Anticipated Fact Testimony to Expert Testimony.

Defendants use the District's February 2024 productions as another chance to exclude Mr. Brody's fact testimony regarding his FRE 1006 summary and tabulation of post-February 14, 2016 remediation related costs. Yet nothing changes the persuasiveness of the District's prior arguments. Defendants complain that because "damage numbers" are not obvious from the face of an invoice and "recoverable costs" thus cannot simply be determined by adding up invoice payments, Mr. Brody's anticipated testimony is really expert analysis. ECF No. 274 at 6. However, Defendants made the same argument in their initial brief on post-complaint damages motion *in limine*, *before* the District made its February 2024 productions. *See* ECF 250-1 at 8-9 (arguing that the District's produced invoices are

---

[8] Defendants' continuance proposal to the District embraced the notion of a cut-off date, but only so long as it comes with their long-sought continuance. *See* Van Eaton Decl., ¶ Ex. 15. Court intervention may be necessary.

10

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

1  ambiguous and require expert testimony).  This alone shows the District's February 2024 disclosures do
2  not support any new challenges to Mr. Brody's fact testimony.  Moreover, the District's detailed FRE
3  1006 cost summary has now eliminated the ambiguity complained of by Defendants.
4     The District's response to Defendants' argument also remains the same.  The District never
5  asserted that an invoice payment must be immediately ascertainable by *any* lay person as remediation-
6  related to be properly fact testimony.  Rather, someone "with personal knowledge of day-to-day field
7  remediation work at the Avalon School and the associated costs of that work—which Mr. Brody
8  possesses—could . . . readily understand whether an invoice pertains to remediation work as opposed to
9  non-remediation work."  ECF No. 264 at 4-5.  Mr. Brody's close work for over six years with members
10 of the District's remediation team, including regulars in the field, to keep track of the District's
11 remediation costs is the accumulated personal experience he acquired to readily distinguish invoice
12 descriptions or codes as remediation-related.  *See* ECF No. 264 at 4.
13    Further, Defendants claim that the District's February 2024 disclosures "repudiate[] the
14 argument that . . . Brody would merely be 'adding up invoice payments in a spreadsheet' using his
15 'basic familiarity with arithmetic and excel' to arrive at total costs."  ECF No. 274 at 6.  The District
16 actually argued that Mr. Brody can use his common sense and personal site-related knowledge to
17 distinguish remediation from non-remediation site costs *and then* use his "basic familiarity with
18 arithmetic and excel" to arrive at total remediation-related costs.  ECF 264 at 5.  This "basic familiarity"
19 contrasts sharply with, for example, Mr. Brody's own sophisticated Monte Carlo analysis offered in his
20 expert rebuttal report.  Mr. Brody's FRE 1006 summary-related cost testimony is fact testimony.

### III.  CONCLUSION

22    The District's production of 82 invoices in early February does not prejudice Defendants, excuse
23 Defendants' failures to diligently pursue cost discovery, or support months of trial delay so Defendants
24 can compensate for their prior discovery shortcomings.  Even if Defendants were prejudiced, such
25 prejudice could be cured through reasonable discovery.  And even if any prejudice could not be so
26 cured, the next best solution would not be trial delay but the Court's establishment of a cut-off date for
27 the costs that will be at issue at trial.

11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2 | |
| 3 | Dated: February 19, 2024     BEVERIDGE & DIAMOND, P.C. |
| 4 | By: */s/ Joshua Van Eaton* |
|   |     Joshua Van Eaton |

BEVERIDGE & DIAMOND, P.C.
Joshua Van Eaton (*Pro Hac Vice*)
John C. Cruden (SBN 63476)
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

Gary J. Smith (SBN 141393)
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone: (415) 262-4000
Facsimile: (415) 262-4040

Michael Vitris (*Pro Hac Vice*)
400 West 15th Street, Suite 1410
Austin, TX 78701
Telephone: (410) 230-1300

Erika H. Spanton (*Pro Hac Vice*)
600 University Street, Suite 1601
Seattle, WA 98101
Telephone: (512) 391-8000

ATKINSON ANDELSON LOYA RUUD AND ROMO
Scott Jordan Sachs (SBN 213737)
12800 Center Court Drive, Suite 300
Cerritos, CA 90703
Telephone: (562) 653-3599
Facsimile: (562) 653-3951

WFBM, LLP
Sage R. Knauft (SBN 194396)
One City Boulevard West, Fifth Floor,
Orange, CA 92868-3677
Telephone: (714) 634-2522
Facsimile: (714) 634-0686

12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON
DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS

*Attorneys for Plaintiff/Counterdefendant*
LONG BEACH UNIFIED SCHOOL DISTRICT

13

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEFING ON DEFENDANTS' MOTIONS *IN LIMINE* # 1 AND # 3; CASE # 2:19-CV-01139-MEMF-AS