Joshua Van Eaton (*Pro Hac Vice*)
jvaneaton@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

Attorney for Plaintiff/Counterdefendant
Long Beach Unified School District

*[Additional Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG BEACH UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>    vs.<br><br>SANTA CATALINA ISLAND COMPANY and CITY OF AVALON,<br><br>    Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No. 2:19-cv-01139-MEMF (ASx)<br><br>**JOINT STATUS REPORT**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br><br>Complaint Filed: February 14, 2019<br>Trial Date: March 25, 2024 |

Pursuant to the Court's Final Pretrial Conference Order, ECF No. 297, Plaintiff the Long Beach Unified School District ("District") and Defendants Santa Catalina Island Company ("ICO") and City of Avalon ("City") (collectively "the Parties") submit the following joint status report enumerating the pretrial matters that they anticipate will need extensive argument at the Final Pretrial Conference scheduled for March 20, 2024 at 10:00am.

**A.    Trial Schedule**

The Parties agree on the standard 9:00 am to 5:00 pm trial schedule. Plaintiff requests the Court reconsider its ruling on the time limits set forth in the Final Pretrial Conference Order (20 hours per party) and allocate a minimum of 50% of the total allotted time (30 hours) to Plaintiff to present its case.

The Parties' respective positions regarding this request are as follows:

**Plaintiff's Position:**

The Court's current Order allocating Plaintiff only one-third of the total time to present its case is prejudicial to Plaintiff and provides an unfair advantage to Defendants. Plaintiff bears the burden of proof on all of the essential elements of its claim for nuisance and must establish liability separately as to each Defendant. The conduct that is alleged to have caused the nuisance is not identical and will require distinct factual and expert evidence to prove as to each Defendant. Plaintiff will also be required to rebut the arguments of two separate parties, each with its own fact witnesses and environmental experts, rather than one. By contrast, Defendants will be able to coordinate with each other on common defense arguments and will have twice as much time as Plaintiff in which to do so. Defendants are also sharing an archeologist expert witness, and the Defendants' joint expert witness historian, Dr. Littlefield will not testify at trial, significantly reducing the time necessary for their defense. As a matter of fundamental fairness and to prevent undue prejudice, Plaintiff should be allocated more time to present its case, but at a minimum at least 50% of the total time.

**Defendants' Position**

Defendants believe that the Court's present allocation of trial time is reasonable, and will encourage an efficient use of trial time. As noted by Plaintiff, the allegations against each defendant involve "distinct" evidence and each Defendant is entitled to adequate time to develop their respective defenses. Plaintiff has raised no new argument that it could not have raised at the pre-trial conference on the issue of trial time, other than the disclosure that Dr. Littlefield will not testify at trial. However, the absence of Dr. Littlefield does not justify an increase in Plaintiff's hourly allotment as his absence should decrease the length of Plaintiff's case as Plaintiff will not need to cross-examine him or present rebuttal testimony to his testimony.

B.  **Remaining Witness Issues**

The Parties have met and conferred and have identified the following witness issues for discussion and/or argument at the Final Pre-Trial Conference.

1. **DTSC Witnesses**

Plaintiff has subpoenaed California Department of Toxic Substances Control employees Javier

1 Hinojosa and Shahir Haddad to appear at trial. Plaintiffs' counsel has been contacted by the California
2 State Attorney General's office and has been informed that it plans to send staff counsel to represent
3 these witnesses at trial. Staff counsel has requested guidance from the Court as to whether they can
4 appear and object to questions of DTSC witnesses at trial.

### 2. Prequalification of Expert Witnesses

With the exception of Dr. Littlefield's opinions (discussed further below), the Parties have agreed to stipulate that all testifying experts are generally qualified to provide expert opinions in their respective fields, subject to the Court's approval. Subject to the Court's approval, the Parties would submit current resumes for all of testifying experts for the Court's consideration. If the Court agrees to the experts' qualifications, the Parties would request a pre-instruction to the jury that the Court has evaluated the experts' qualifications and found that each of the testifying experts are qualified in their respective field to provide expert testimony. However, the Parties reserve their rights to challenge specific opinions offered by these experts as beyond the scope of their expertise.

### 3. Potential Rebuttal Expert Testimony – Gary Hokkanen

At the March 14, 2024, meet and confer meeting, Defendants indicated they intended to again seek the Court's permission to have expert Gary Hokkanen provide rebuttal expert testimony regarding Plaintiff's alleged costs to be presented through fact witness Neal Brody. Plaintiff indicated that it would object to this repeat request.

**Plaintiff's Position:**

Defendants first requested the Court allow Mr. Hokkanen to provide undisclosed expert testimony at the jury trial during the March 6, 2024 Joint Status Conference. The Court was correct not to grant the request in the March 11, 2024 Final Pretrial Conference Order. Nothing warrants a change in position now.

Defendants' request to introduce undisclosed rebuttal expert testimony through its expert Gary Hokkanen is untimely and prejudicial. The deadline for expert disclosures has long passed, the Court has excluded Mr. Hokkanen's Opinion No. 1, and Defendants represented to the Court that Mr. Hokkanen would not offer opinions on any other topic during the jury trial. ECF No. 273 at 9.

Defendants have been on notice of 99.99% of the costs to be put at issue at the jury trial for more

than a year. Plaintiff produced invoices for all the costs at issue at least one year—and in most cases years—ago.[1] Defendants were on notice of most these costs when Mr. Hokkanen amended his expert report in March 2023. Defendants were on notice of most these costs when Mr. Hokkanen sat for his expert deposition on March 9, 2023. Defendants were on notice of all of these costs when Defendants represented to the Court during February 7, 2024 motion in limine hearing that they would not seek to offer Mr. Hokkanen's testimony at the jury trial on any issue other than *opinion 1* of his expert report. Defendants were on notice of all these costs when the Court relied on that representation when ruling on Plaintiff's motion to exclude Mr. Hokkanen from testifying on any issue at trial. Yet, Defendants waited until the eve of trial to try and disclose Mr. Hokkanen in a new testifying expert role, and have not disclosed any expert opinions. This end-run around expert disclosure rules and the motions in limine process are improper and prejudicial.

Any claims that the Plaintiff's FRE 1006 summary presents "new costs" are false. As already stated, Defendants have had the invoices reflecting these costs for at least a year, and in most cases years. In fact, Defendants had Mr. Hokkanen review and itemize more than a third of the costs listed on Plaintiff's FRE 1006 summary *years* ago, but made the decision not to have Mr. Hokkanen offer any expert opinion as to the District's costs. *See* Declaration of Michael F. Vitris in Support of Joint Status Report ("Vitris Decl."), Exhibit 1. Additionally, Defendants have been on notice the District intended to seek remediation costs associated with modernization work. This topic was specifically addressed in Mr. Brody's expert opinion on future costs, an opinion covered by Defendants during Mr. Brody expert deposition in March 2023.

It would also be prejudicial to allow Mr. Hokkanen to testify at the jury trial on an issue Plaintiff's was denied any meaningful opportunity to depose Mr. Hokkanen on. During Mr. Hokkanen's March 2023 deposition he testified under oath that he was not offering any opinions as to the District's remediation costs. *See* Vitris Decl., Exhibit 2 at 46:6-8; 60:9-10. In fact, during Mr. Hokkanen's deposition, Mr. Trimarche objected to any questioning as to the District's costs. *See* Vitris Decl., Exhibit 2 at 63:12-20 (Mr. Trimarche: "this witness has testified he was not asked to opine as to costs

---

[1] The single exception is a September 8, 2022 Waste Management invoice for $1,655.79 that was inadvertently omitted from prior cost productions. This invoice was produced on February 1, 2024.

1  incurred and paid solely by the District. And you are showing him documents that appear to relate to
2  that issue that he says he hasn't seen before and aren't included to his Exhibit C, and you are actually not
3  entitled to ask him in this deposition to analyze those documents he has never seen before to answer
4  hypothetical questions").

5  Even if Defendants had disclosed these rebuttal opinions, since Plaintiff's alleged damages are
6  not being presented through expert testimony, there are no expert "opinions" for Mr. Hokkanen to rebut.
7  Defendants are free to cross-examine Mr. Brody on his tabulation of Plaintiff's damages and it is unclear
8  what additional purpose Mr. Hokkanen's testimony would serve.

9  For the reasons discussed during the March 6, 2024, Final Pretrial Hearing Conference and set
10  forth above, Defendants request should be denied.

11  **Defendants' Position:**

12  Defendants wish to have Mr. Hokkanen testify in rebuttal to a cost claim summary first
13  disclosed by Defendants on February 7, 2024 (roughly six weeks before trial).  At that time, Defendants
14  discovered for the first time that Plaintiff was seeking recovery of costs, such as ballfield replacement
15  and HVAC upgrading costs, going far beyond the costs of complying with the DTSC order.
16  Defendants could not have disclosed an opinion to rebut these costs during expert discovery as the cost
17  claim was not provided until the eve of trial, long after expert disclosures had passed.   Allowing
18  Plaintiff to present their expert witness Neal Brody to opine as a fact witness as to these cost claims,
19  without allowing Defendants to put on a witness to rebut them, would greatly prejudice Defendants and
20  reward Plaintiff for not providing its required damage claim disclosure prior to discovery.

21  Plaintiff seems to be arguing that after Plaintiff made a late disclosure of invoices (March 2023),
22  Defendants should have realized that Plaintiff was asserting challengeable claims for recovery, then
23  moved to re-open expert discovery to allow their expert to challenge these new damage claims.
24  However, while Plaintiff did make a "document dump" of $18 million of invoices in March 2023 (after
25  discovery had closed), it never indicated what of these invoices it claimed were recoverable costs.  As it
26  turns out, once it finally provided a damage disclosure almost a year later, only 17 percent of the
27  produced invoicing is relevant.   Under Plaintiff's theory, Defendants should have had their expert go
28  through the $18 million of late produced invoices, then guess as to what invoices Plaintiff believed were

1 relevant to its claims, then prepared a report challenging those claims that he guessed Plaintiff might be
2 making, and then moved to re-open expert discovery so that it could submit this new report. This places
3 the burden of Plaintiff's late and inadequate disclosure on Defendants.

4       Defendants did not delay in bringing their request to call an expert witness to rebut the newly
5 disclosed damage claims to the Court's attention. The Court did not rule that Mr. Brody would be
6 allowed to present the February 7 damage claims as a fact witness until February 21, 2024. (Dkt. 284).
7 Defendants first requested the ability to call an expert to rebut Plaintiff's damage disclosure on February
8 14, 2024, in supplemental briefing in support of a request to exclude Mr. Brody from testifying, as an
9 alternative request for relief if the Court should allow Brody to testify. (Dkt. 274). In other words,
10 Defendants requested the ability to call a rebuttal expert to challenge damage claims presented by
11 Brody, even before the Court ruled that Brody would be allowed to testify. After the Court did not rule
12 on this request in its February 21 ruling, Defendants brought the fact that the Court had not ruled on this
13 prior request to the Court's attention at the March 6, 2024, final status conference.

14       Plaintiff should have made its damage claim timely and in a clear manner. Defendants have
15 timely brought up their objections to the use of Brody to present this untimely disclosure. Had Plaintiff
16 timely disclosed their damage claim prior to the close of discovery, they would have designated
17 Hokannen to challenge it. Defendants should not be deprived of this opportunity due to Plaintiff's
18 failure to meet discovery deadlines.

      **4.    Defendants' Expert Witnesses Reliance on Non-testifying Expert Douglas Littlefield**

21       At the March 14, 2024, meet and confer meeting of counsel, Defendants confirmed that their
22 expert historian Douglas Littlefield would not be testifying at trial. The remaining disputed issues with
23 respect to Plaintiff's objections to his annotated photographs are discussed in Section C.1., below. In
24 addition to the issue of these disputed exhibits, however, Plaintiff informed Defendants that it intended
25 to raise the issue of other Defense experts' reliance on Dr. Littlefield's opinions with the Court at the
26 Final Pretrial Conference.

      **Plaintiff's Position:**

28       Because Dr. Littlefield will not testify at trial, Plaintiff objects under Rules 702 and 703 to the

6

JOINT STATUS REPORT; Case # 2:19-cv-01139-MEMF-AS

1 | other Defense expert witnesses offering testimony based on Dr. Littlefield's expert opinions.
2 | Specifically, Plaintiff objects on the grounds that (1) Defendants' other expert witnesses are not
3 | qualified to offer Dr. Littlefield's expert opinions; and (2) Defendants cannot otherwise establish the
4 | reliability of Dr. Littlefield's opinions at trial without Dr. Littlefield's testimony.

Ordinarily, one testifying expert relying on the opinions of another testifying expert comports with Rules 702 and 702 because both experts will testify at trial and establish their qualifications and the reliability of their opinions. For example, the District's environmental expert will rely on the opinions of the District's history and archeology experts—but only after those experts have been qualified by the Court and established the reliability of their opinions. Here, Defendants' non-historian experts should not be allowed to offer opinions premised on Dr. Littlefield's opinions where Dr. Littlefield will be unavailable to establish the reliability of those underlying opinions and will be not subject to cross-examination.

For example, Defendants' archeological expert Christoper Dore offers opinions concerning the origin of military and paramilitary artifacts (rifle cartridge shell casings and a uniform button) at the school property which are directly predicated upon Dr. Littlefield's historical opinions that there was a boys camp known as Camp Schreiber in the late 1890s which produced trash that was likely dumped in Falls Canyon. *See* Vitris Decl., Exhibit 3 at 23. Without Dr. Littlefield to provide these foundational opinions at trial, however, Dr. Dore should not be permitted to testify on this topic. Dr. Dore is not a historian and should not be permitted to offer the historical opinions of a non-testifying expert under the guise of offering "support" for his own opinions. *Villagomes v. Lab. Corp. of Am.,* No. 2:08–cv–00387–RLH–GWF, 2010 WL 4628085, at *4 (D. Nev. Nov. 8, 2010) ("A testifying expert may rely on the opinions of non-testifying experts as a foundation for the opinions within the testifying expert's field of expertise. Rule 703, however, is not a license for an expert witness to simply parrot the opinions of non-testifying experts."). Because Dr. Littlefield's opinions are clearly hearsay and are not admissible without his testimony, and Plaintiff will not have the opportunity to cross examine him at trial, it would be manifestly prejudicial to allow Defendants to introduce his opinions though the testimony of their other expert witnesses.

**Defendants' Position:**

A blanket exclusion of reliance of all defense experts on Dr. Littlefield's reports is unwarranted. Rather, any objection to the reliance on an aspect of the report would depend on the specific opinion. An "expert is free to give his opinion relying upon the types of data an expert would normally use in forming an opinion in his area of expertise." Mannino v. Int'l Mfg. Co., 650 F.2d 846, 851 (6th Cir. 1981) "If an expert's consultation of another expert's opinion is a resource 'reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.'" Ohio Env't Dev. Ltd. P'ship v. Envirotest Sys. Corp., 478 F. Supp. 2d 963, 974–75 (N.D. Ohio 2007) (citing FED.R.EVID. 703 and *Mannino*).

Of course, Defendants have no intention of introducing the entirety of Littlefield's reports or his opinion. However, they are allowed to rely on Littlefield's report to support their own opinions to the extent that experts in their respective fields are reasonably rely upon such reports. Whether a particular reliance is appropriate depends on what opinion is being offered. For instance, to use Plaintiff's example, an archeologist, like Chris Dore, customarily relies on historical reports to give context to what is found in the field. If such reliance is customary for an expert in the field, then an expert may rely on such reports for the purpose of providing an opinion.

C. **Remaining Exhibit Issues**

On March 15, 2024, the Parties submitted their Joint Statement as to Trial Exhibits (ECF No. 301) in accordance with the Court's Final Pretrial Conference Order. The following issues require further argument at the Final Pretrial Conference:

1. **Exhibits Annotated by Defense Expert Douglas Littlefield (*Exhibits 1058 and 1060*)**

**Plaintiff's Position**:

Defendants have agreed to provide unannotated versions of Exhibits 229, 240, 451, 1012-1057, 1059, and 1061-1115. Plaintiff does not object to replacing these exhibits with the unannotated versions.

1  Plaintiff maintains its objections to Exhibits 1058 and 1060, which are a screen capture of a Google
2  Earth image annotated by Dr. Littlefield (Ex. 1058), and a modern photograph taken and annotated by
3  Dr. Littlefield (Ex. 1060), because these two documents are not ancient documents and were
4  downloaded or created by Dr. Littlefield.  Plaintiff objects on the basis that they are inadmissible
5  hearsay and lack foundation.

**Defendants' Position:**

Defendants will withdraw exhibits 1058 and 1060.

2.  **Exhibits Relied on by Defense Expert Gary Hokkanen (*Exhibits 135-139, 380-450, 452, 455*)**

Following the Parties' meet and confer meeting on March 14, 2024, a dispute remains with respect to whether Defense expert Stephen Washburn can refer to the exhibits relating to soil contamination at other LBUSD schools referenced above.

**Plaintiff's Position:**

The Court's Final Pretrial Conference Order provides:

"Defendants acknowledged that the Court has already excluded Hokkanen's testimony, ECF No. 273 at 8-9, and therefore these exhibits cannot derive their relevance from the fact that Hokkanen relied on them. Defendants explained that these exhibits concern comparator schools and asserted that their expert Stephen T. Washburn also relied upon comparator schools.  Only those exhibits actually relied upon by Stephen T. Washburn []in his expert report will be permitted. The parties are ORDERED to meet and confer as to which of these Exhibits were relied upon by Washburn, and revise the Joint Exhibit List accordingly."

ECF No. 297 at 6.

Rule 26(a)(2)(B)(ii) requires testifying experts to disclose in their reports "the facts and data considered by the witness" in forming their opinions.  None of the disputed exhibits are listed in the references cited in Mr. Washburn's three expert reports.  *See* Vitris Decl., Exhibits 4-6. Plaintiff objects to the use of the exhibits relied on by Mr. Hokkanen by any Defense witness, including Mr. Washburn.

**Defendants' Position:**

Defendants, having confirmed that Island Company expert Washburn did not specifically cite or rely upon the contested materials, now agree that Washburn will not refer to the contested exhibits relating to soil contamination at other LBUSD sites.

### 3. Remaining Disputed Exhibits

The remaining objections to disputed exhibits were identified in the Parties Joint Statement as to Trial Exhibits (ECF No. 301) and are awaiting the Court's final ruling.

### D. Pretrial Jury Instructions and Verdict Forms

In accordance with the Court's final Pretrial Conference Order, the parties met and conferred regarding the remaining disputed jury instructions and verdict forms and submitted amended disputed and undisputed jury instructions and verdict forms to the Court on March 15, 2024. The remaining disagreements relate to the definition of "intentional conduct" and the appropriate legal standard for the affirmative defense of consent. The Parties' respective positions with respect to both issues are fully briefed in the disputed set of jury instructions and verdict forms. ECF No. 304 at 9-13; ECF No. 305 at 8-11.

### E. Pretrial Stipulation re: Abatability

In accordance with the Court's final Pretrial Conference Oreer, the Parties meet and conferred with regard to Defendant's offer at the March 6, 2024 Pretrial Conference hearing to enter into a stipulation that the continuing nuisance is abatable. This issue arose during the Final Pretrial Conference on March 6, 2024, with Defendants' attempt to remove the need for Plaintiff to introduce past costs to prove that the nuisance was abatable. *See* Vitris Decl., Exhibit 7 at 70:15-19 ("What we have offered to the plaintiff is to withdraw [the abatability] question for the jury because they are only going to be addressing past costs and instead -- and thus make the potential for putting in all the pre-2016 costs completely irrelevant. So that would be withdrawn from the jury."). The Parties were unable to reach an agreement on the language of such a stipulation. Defendants offered to stipulate to remove element 9 from the applicable nuisance jury instruction—that the nuisance can be remedied at a reasonable cost and by reasonable means.

**Plaintiff's Position**:

A nuisance is continuing—as opposed to permanent—if it can be abated by reasonable costs and means. Abatement in this case is straightforward: contaminated soil is identified, dug up and removed from the site. Defendants have expressed concern that if they stipulate to abatability they are also stipulating that the *actual* costs the District spends abating the nuisance have been and will be

reasonable. This fear is misplaced and conflates the question of whether the District can establish all of the elements of nuisance liability with the question of whether the District's damages are reasonable. Specifically, to prevail on its nuisance claim, the District need only establish that the nuisance is *capable* of being abated by reasonable means at reasonable cost. On the other hand, whether the District's *actual* costs abating the nuisance are reasonable goes to the District's damages and right to recover future costs under the abatement order. Of course, the District cannot force Defendants to stipulate to abatability, but the District would emphasize to Defendants that the Abatement Order it seeks in this case (ECF No. 292-1) provides a mechanism for Defendants to challenge the reasonableness of any future abatement costs, subject to the Court's continuing jurisdiction. Perhaps if the Court confirmed to the Parties that any Abatement Order it enters would only require reimbursement of reasonable costs, Defendants would reconsider their willingness to stipulate to the abatability element of the District's nuisance claim. This would streamline the presentation of evidence at trial.

### Defendants' Position:

The DTSC has already determined what contamination needs to be removed at the site and has approved hot-spot removal of contamination at several discrete locations. The DTSC is not requiring that other contamination, such as the contamination that may be located underneath the school buildings, be removed. The work required by the DTSC has been approved, and no further work is being required.

The question of whether the hot-spot removal performed per instruction of the DTSC is reasonably abatable is a different question from whether the removal of further contamination not required by the DTSC (for instance, contamination under a century-old building) is reasonably abatable. As the jury is being asked to make a determination only on cost recovery of work performed at the request of the DTSC, Defendants offered to agree to remove the abatablity element from the jury instructions and not require a jury determination to reach a verdict. Plaintiff is apparently unwilling to do this unless Defendants agree that all contamination at the site (including contamination that is located underneath the buildings) is reasonably abatable. As Defendants are unwilling to do this, no agreement is reached.

F. **Findings of Fact**

In accordance with the Final Pretrial Conference Order, the parties met and conferred on stipulated facts and filed a list of stipulated facts on March 12, 2024. This list combined the facts that the Parties agreed to with the list of facts that were established by the Court in its Summary Judgment order (ECF No. 241 at 7), as agreed during the Final Pretrial Conference. Defendants objected to include one fact established by the court: "Approximately 289 tons of contaminated dirt has been excavated from the Ball Field to date."

**Plaintiff's Position:**

This fact is taken verbatim from the Court's Summary Judgment order and has been established for trial. (ECF No. 241 at 7). Plaintiff understands Defendants' objection to be that the fact is unfairly prejudicial because it relates to pre-2016 work. But the Court has already ruled that pre-2016 information is relevant in its decision denying Defendants' motion *in limine* on this topic. (ECF No. 273 at 13). Plaintiffs request that this fact be added to the list of stipulated and established facts.

**Defendants' Position:**

The removal of the 289 tons of contaminated dirt occurred before February 24, 2016. No compensation can be recovered for this work. Including this fact in the stipulation of facts to be read to the jury is confusing to the jury, and prejudicial to Defendants, as the jury will likely believe that they are being asked to make a determination as to who is responsible for the cost of removing this soil, when the responsibility for removing that soil is not at issue in this action.

G. **Additional Topics**

The Parties identify the following additional issues for discussion at the final Pretrial Conference on March 20, 2024:

1. **Witness Instructions and Recalling Witnesses**

The Parties affirm that they have provided—or will provide prior to trial—guidance to all of their witnesses to abide by the Court's orders with respect to the conduct of witnesses at the courthouse and to adhere to the Court's prior rulings on the motions *in limine*.

1  The Parties agreed that witnesses would be called one time at the jury trial for all testimony and
2  would not be subject to recall by the other party.  This does not apply to recalling witnesses for the
3  bench trial.

### 2. Physical Evidence

Plaintiff plans to bring several historical artifacts that were excavated from the Site to show to the jury during trial.  Defendants do not object to this evidence.  The Parties request guidance from the Court on proper procedures for handling this evidence during trial.

### 3. Voir Dire Questions

The Parties are prepared to discuss any of the proposed voir dire questions the Court finds objectionable.

Respectfully submitted,

Dated: March 18, 2024  BEVERIDGE & DIAMOND, P.C.

By: */s/ Michael F. Vitris*
    Michael F. Vitris

BEVERIDGE & DIAMOND, P.C.
Joshua Van Eaton (*Pro Hac Vice*)
John C. Cruden (SBN 63476)
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone:  (202) 789-6000
Facsimile:   (202) 789-6190

Gary J. Smith (SBN 141393)
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone:  (415) 262-4000
Facsimile:   (415) 262-4040

Michael Vitris (*Pro Hac Vice*)
400 West 15th Street, Suite 1410
Austin, TX 78701
Telephone:   (410) 230-1300

Erika H. Spanton (*Pro Hac Vice*)
600 University Street, Suite 1601

```
                              Seattle, WA 98101
                              Telephone:  (512) 391-8000


                              ATKINSON ANDELSON LOYA
                              RUUD AND ROMO
                              Scott Jordan Sachs (SBN 213737)
                              12800 Center Court Drive, Suite 300
                              Cerritos, CA 90703
                              Telephone: (562) 653-3599
                              Facsimile:  (562) 653-3951

                              WFBM, LLP
                              Sage R. Knauft (SBN 194396)
                              One City Boulevard West, Fifth Floor,
                              Orange, CA 92868-3677
                              Telephone: (714) 634-2522
                              Facsimile:  (714) 634-0686

                              Attorneys for Plaintiff/Counterdefendant
                              LONG BEACH UNIFIED SCHOOL
                              DISTRICT


Dated: March 18, 2024         COOKSEY, TOOLEN, GAGE, DUFFY & WOOG

                              By:  /s/ Gregory D. Trimarche
                                   Gregory D. Trimarche
                                   Jonathan R. Medina

                              Attorneys for Defendant/Counterclaimant, and Cross-
                              Claimant
                              SANTA CATALINA ISLAND COMPANY


Dated: March 18, 2024         BOOTH, LLP

                              By:  /s/ Joshua N. Levine
                                   Joshua N. Levine
                                   Paul D. Rasmussen

                              Attorneys for Defendant/Counterclaimant, and Cross-
                              Claimant
                              CITY OF AVALON
```